153 N.J. Super. 177 (1977)
379 A.2d 297
ANGELO PATITUCCI AND EMMA PATITUCCI, PLAINTIFFS,
v.
JULIAN DRELICH, DEFENDANT.
Superior Court of New Jersey, Law Division.
Decided October 7, 1977.
*178 Mr. Theodore H. Ritter for plaintiffs (Messrs. Horuvitz, Perlow & Ritter, attorneys).
Mr. Charles Viel for defendant (Mr. Harry R. Adler, attorney).
MILLER, J.C.C., Temporarily Assigned.
This is a motion for dismissal of so much of plaintiffs' case as pertains to the theory of strict liability in tort. It is made at the close of plaintiffs' case. From the proofs adduced during plaintiffs' case, and giving plaintiffs the benefit of all legitimate inferences, as the court is required to do, R. 4:37-2(b); Bell v. Eastern Beef Co., 42 N.J. 126, 129 (1964), the following facts appear:
Defendant Drelich is a developer who purchased, subdivided and developed a tract of land in Deerfield Township, Cumberland County, New Jersey. The number of lots so developed is not clear, but it is at least six, a major subdivision under the then, and probably present, law; N.J.S.A. 40: 55-1.14.
This tract did not contain municipal water and sewer, and consequently it was necessary to install as appurtenant to any dwelling constructed on a tract in this subdivision an approved sewage disposal system. N.J.S.A. 58:11-23 et seq.
*179 Defendant complied with the statute and administrative regulations by commissioning Fralinger, a licensed civil engineer, to design such a system, and Fralinger did so, collaborating with the developer to obtain the appropriate health authorities' approval for a system designed for a three-bedroom house. The application and approval clearly so state.
Upon receiving the necessary approvals, Drelich constructed upon the lot in question a four-bedroom house. Sanitary regulations for a private sewage system for a four bedroom house differ from those for a three-bedroom house by requiring a larger septic tank and a greater minimum square footage of leaching trenches or French drains.
Following construction of the house, defendant sold the same to plaintiffs, who moved in together with their six children. Defendant knew prior to this that the house was intended to be occupied by plaintiff family of eight. Following occupancy by plaintiffs, the capacity of the system proved inadequate and raw effluent came to the surface, causing the injury and damages sued for.
Plaintiffs invoke the doctrine of strict liability in tort, Henningsen v. Bloomfield Motors, 32 N.J. 358 (1960), and subsequent cases, Restatement, Torts 2d § 402A.
The doctrine of strict liability in tort is so well established in our jurisprudence as to render a dissertation unnecessary. The question here presented is not whether such doctrine exists but whether it is to be extended to a developer who, while not a mass producer in the same sense as an automobile manufacturer, Henningsen v. Bloomfield Motors, 32 N.J. 358, 384, 391 (1950), or a mass producer of homes, Schipper v. Levitt & Sons, Inc., 44 N.J. 70, 87 (1965), is clearly a professional builder vendor and obviously not in the same class as a seller disposing of his own private home. The rationale to be developed from the cases appears to be bottomed more on the rationale of professionalism or a scope of the business in question than upon the mere bulk of it. The buyer of a home from a builder vendor can no more dig *180 up the ground to inspect the sewage system than the buyer of an automobile can cause the car to be disassembled and tested. It is no perversion of Henningsen and Schipper to apply the principles of strict liability to this developer. See Worrell v. Barnes, 87 Nev. 204, 484 P.2d 573 (Sup. Ct. 1971).
That a system which places raw effluent upon the surface of the yard of a dwelling house is "in a defective condition unreasonably dangerous to the user or consumer," Restatement, Torts 2d, § 402A, is obvious.
That the failure is in a packaged sewage system assembled and installed underground and connected to a dwelling house which obviously is real estate does not inhibit the application of § 402A and Henningsen. True, the components of the system were originally personalty which have become realty as fixtures, National Lead Co. v. Sayreville, 132 N.J. Super. 30, 38 (App. Div. 1975); Fahmie v. Nyman, 70 N.J. Super. 313, 316 (App. Div. 1961), but this fact cannot be allowed to frustrate the intent and purpose of the principle. A developer can no more avoid the consequences of his act by burying the offending article in the ground than an ostrich can avoid danger by burying his head in the ground. It is the complete packaged product as sold which invokes a strict liability doctrine regardless of which technical aspect of the law of property be labeled. A trier of fact might well find from the evidence that Drelich, who as developer is charged with the knowledge of the product he built, sold to plaintiff a product clearly inadequate for them and their children, and plaintiffs are entitled to go to the jury on the issue of strict liability.