## Sports Management Group, Inc. v. Allensville Planing Mill, Inc.

*Edward G. Knauss IV,* for plaintiff.
*James R. Clippinger* and *Robert Siegel,* for defendants.

ZIEGLER, *P.J.*,[1] February 15, 1980—This action was brought by plaintiff following the collapse of the roof of its gymnasium building during January of 1979. The gymnasium had been erected during the summer of 1976 for its previous and original owner. Plaintiff purchased the building during early 1977.

By complaint filed March 12, 1979 plaintiff commenced this action in trespass and assumpsit against Allensville Planing Mill, Inc. (Allensville), the construction contractor who built the gymnasium for plaintiff's predecessor in title, and Alpine Engineered Products, Inc. (Alpine), the supplier of the roof design utilized by Allensville in its construction of the building. Both defendants filed preliminary objections in the nature of a demurrer. No other matters were raised by defendants' preliminary objections. Argument was heard on August 6, 1979.

---

1. Assisted by John K. Mort, Esq., Law Clerk.

Counts I and V of plaintiff's complaint sound in trespass. Count I charges negligence by Allensville in its construction of the gymnasium. Plaintiff contends that the plans and good construction practice were not observed in several particular areas and that the roof was constructed without necessary lateral bracing. Count V charges negligence on the part of Alpine in failing to provide a suitably strong and safe roof design and sets forth several particular deficiencies in roof design. The basis of defendants' demurrers to these counts in trespass is that, because the gymnasium and roof were not constructed for plaintiff, no contractual relationship existed between plaintiff and defendants. Defendants contend that they owed no duty and are not liable to a remote purchaser such as plaintiff. In this respect defendants rely mainly upon Grodstein v. McGivern, 303 Pa. 555, 154 Atl. 794 (1931), and Curtin v. Somerset, 140 Pa. 70, 21 Atl. 244 (1891). However, the requirement of contractual relationship as a prerequisite to maintenance of negligence actions has been significantly eroded over more recent years just as the "citadel of privity" has been subject to successful assault in the breach of warranty area. As stated in Krisovich v. John Booth, Inc., 181 Pa. Superior Ct. 5, 9, 121 A. 2d 890, 892 (1956): "No longer, when the consequences of negligence may be foreseen, does liability grow out of contract."[2] Also see Prost v. Caldwell Store, Inc.,

2. Krisovich v. John Booth, Inc., supra, involved a construction contractor who installed an underground gas main beneath a dirt sidewalk. As a result of improperly tamped back fill, the plaintiff was injured while walking on the sidewalk when the ground suddenly gave way underneath him. Defendant was found liable despite the fact that he had finished his work and that same had been accepted by the township which hired him because the injury to plaintiff was a foreseeable result of the construction contractor's negligence.

409 Pa. 421, 187 A. 2d 273 (1963); Prosser, Law of Torts §104; Siegler v. Counties Contracting & Construction Co., 203 Pa. Superior Ct. 568, 202 A. 2d 127 (1964); Masciangelo v. Dolente, 222 Pa. Superior Ct. 368, 295 A. 2d 98 (1972). It is imposed by law and arises from the very nature of the actor's undertaking. This principle comports not only with reason but with notions of proper distribution of liability for fault. If, for example, X builds a house or other building (a gymnasium perhaps) for Y and does so in such a negligent manner that collapse of the structure is imminent, is he to escape liability for his negligent construction merely because Y happens to sell the house or building to Z before it collapses? While the notion of privity of contract would have shielded X from liability in a previous day, it is precisely this result which the law has striven to eradicate in recent times. Insofar as the foreseeability issue is concerned, it is readily apparent that houses and other buildings, which are usually built to have a life or use expectancy of extended duration, will most likely have several owners during their useful life expectancies. Such changes in ownership are foreseeable. Furthermore it is foreseeable that a negligently designed and constructed roof would collapse under the weight of snow accumulation. We are concerned here, of course, only with defendants' demurrers premised upon the lack of contractual relationship with and duty to plaintiff. On this ground the demurrers cannot be sustained to either Count I or V of plaintiff's complaint.

Count III of plaintiff's complaint sounds in assumpsit and is based on breach by defendant Allensville of express and/or implied warranties that the gymnasium building and roof were merchantable and fit for the purpose for which they were

bought, sold and used. In its brief plaintiff expressed willingness to amend Count III to charge breach of warranty of reasonable workmanship in lieu of warranty of merchantability. We perceive no compelling reason to require this proposed amendment in light of the largely semantical difference between the two warranty descriptions and will consider the matter in accordance with the legal standards and warranties, if any, applicable to the cause of action alleged in Count III. The gravamen of Allensville's demurrer again rests upon lack of contractual relationship between plaintiff and Allensville and the lack of such warranty in Pennsylvania law.

In Elderkin v. Gaster, 447 Pa. 118, 128, 288 A. 2d 771, 777 (1972), the Supreme Court held that a residential developer/builder-vendor "impliedly warrants that the home he has built and is selling is constructed in a reasonably workmanlike manner and that it is fit for the purpose intended—habitation." In Spencer v. Leo S. Firanski & Son, Inc., 67 D.&C. 2d 235 (1974), the court found that a remote purchaser (who purchased the house from the party for whom defendant-builder originally constructed it) could enforce the implied warranty established by Elderkin v. Gaster, supra. The court relied upon Salvador v. Atlantic Steel Boiler Co., 457 Pa. 24, 319 A. 2d 903 (1974), which established that lack of "horizontal privity" no longer barred suit for breach of warranty. In other words this decision meant that an aggrieved party could sue regardless of lack of contractual privity with the party which had allegedly breached an implied warranty. The suing party was no longer required to be the original purchaser in order to bring suit. The abolition of the requirement of "vertical priv-

ity" had come several years earlier in Kassab v. Central Soya, 432 Pa. 217, 246 A. 2d 848 (1968), where the Supreme Court held that purchasers could maintain actions for breach of warranty against remote manufacturers with whom they had no contractual relationship or privity. The Washington County court in Spencer reasoned that there was no logical reason to differentiate between products and real estate and require privity of contract with respect to real estate and not require same in the product area. The decision in Spencer also noted that no persuasive reason existed to justify drawing a distinction between recovery for personal injury and recovery for property damage and economic loss, citing Kassab v. Central Soya, supra, at 231, fn. 7, 246 A. 2d at 854, fn. 7. We find this reasoning persuasive.

In light of the above authorities and the legal developments reflected therein, we cannot say that extension of implied warranty to the instant factual situation would be unreasonable. Such extension would not constitute a quantum leap in legal development but rather a logical extension consistent with the progression of legal development as reflected in the above cited cases. While the present case does not deal with a builder/vendor of a residential dwelling it does not appear that extension of the holding in Elderkin v. Gaster, supra, to the present case would be illogical or inconsistent with recent legal developments.[3] Of course, an implied warranty that a building such as a gymnasium is constructed in a reasonably workmanlike manner and is fit for the purpose intended would most likely

3. See Metropolitan Edison Co. v. United Engineers & Constructors, Inc., 4 D.&C. 3d 473 (1977).

not be co-extensive with an implied warranty of habitability. It would seem to embrace, however, the notion that the structure would be fit for gymnasium purposes. These purposes would require in turn that the roof of the structure not collapse during the course of the building's reasonably anticipated useful life. It would also appear that, with the abolition of the requirements of both horizontal and vertical privity, extension of such warranty to a subsequent purchaser only two to three years after construction would not be improper: Spencer v. Leo S. Firanski & Son, Inc., supra.

Count IV of plaintiff's complaint is also in assumpsit. It charges Allensville with breach of a contractual provision to the effect that all work on the gymnasium was to be completed in a workmanlike manner according to standard practices. Even if this express contractual provision were held applicable to plaintiff there are problems of contract verification to be considered with respect to this count. A copy of the purported contract containing this allegedly breached provision is attached to plaintiff's complaint as Exhibit "A." The document is a proposal by Allensville submitted to one Ed Isabella of Camp Woodward in Woodward, Pa. At the bottom of the document adjacent to a paragraph entitled "Acceptance of Proposal" there is an apparently undated signature. The signature is illegible. Nothing appears in the document or in the complaint to establish that this was the contract between Allensville and plaintiff's predecessor in title and original owner of the gymnasium, National Centers, Inc. No connection between Ed Isabella and the original owner is ascertainable. The only link between the two would appear to be the reference to Camp Woodward in Woodward,

Pa., in both the complaint and the purported contract.

There would appear, then, to be no contractual rights in plaintiff arising from a contract between Allensville and plaintiff's predecessor in title for which the gymnasium was built unless same could be extended to plaintiff as an intended or third-party beneficiary under the rationale that all subsequent owners possess the right to enforce standards of workmanship set forth in the original contract. While we believe that it is extremely doubtful that plaintiff could establish third-party beneficiary rights, we would point out that the relief sought in Count IV of plaintiff's complaint could be adequately pursued by Count III. The two counts are essentially parallel and would reach the same end if plaintiff prevailed on either or both. Accordingly we will sustain the demurrer to Count IV.

Count II sounds in trespass. Plaintiff charges therein that Allensville is strictly liable in tort for the loss occasioned by the collapse of the gymnasium roof under the principles of section 402A of the Restatement, 2d, Torts. As noted by counsel for Allensville in its reply brief, the case of Cox v. Shaffer, 223 Pa. Superior Ct. 429, 431, 302 A. 2d 456, 457 (1973) (allocatur refused), would appear to render section 402A inapplicable. There it was stated, in a case charging the defendant with strict liability in connection with the construction and design of a silo for and on land belonging to plaintiff's employer, that "the language of Section 402A reveals, that section applies only to 'One who sells any product in a defective condition.' A silo constructed in place on the employer's land is not a sale of a 'product.' We find the section inapplicable by virtue of its very clear language and find no need to

resort to any extended reasoning to support our determination that a building so constructed on the site is not a product within the intent and meaning of Section 402A." While this ruling would appear to be in accord with a fair reading of 402A and its primary purpose, we find that more recently the Supreme Court noted that "[t]he scope of liability of the class of builders differs significantly from that of the class of owners. First, the class of persons to whom builders may be liable is larger than the class to which owners may be liable. Landowners may be liable to others who come onto their land. Builders, however, may be liable both to the landowners and to others who use the land. Second, *a builder may be liable for construction defects under various legal theories* — contract, warranty, negligence, and *perhaps strict liability in tort.*[3] [3. Compare Restatement (Second) of Torts §385 (1965) with id. §402A.]" Freezer Storage, Inc. v. Armstrong Cork Co., 476 Pa. 270, 276, 382 A. 2d 715, 718 (1978). (Footnote in original.) (Emphasis supplied.) Given this statement, the possible reading of section 385 of the Restatement and the possible expansion of the term "product" as employed in 402A, at least some doubt is cast upon the continued viability of Cox v. Shaffer, supra.[4] In light of this and the gen-

---

4. See, for example, Patitucci v. Drelich, 153 N.J. Super. 177, 379 A. 2d 297 (1977), wherein the New Jersey Superior Court held that a developer/builder vendor was strictly liable in tort for the sale of a lot and house with a sewage disposal system which placed raw effluent upon the surface of the yard around the house. In applying section 402A the court stated, "It is the completed packaged product as sold which invokes a strict liability doctrine regardless of which technical aspect of the law of property be labeled." Id. at 299. Such a ruling recognizes and is consistent with the principle that an unduly narrow and restrictive definition of "product" serves to undermine the vitality and purpose of the doctrine announced by section 402A.

eral rule that a demurrer should be sustained in only the clearest case where it appears with certainty that the law will not permit recovery upon the facts averred, we would be reluctant to and will not sustain the demurrer to Count II.

## ORDER

Now, February 15, 1980, after argument of August 6, 1979, defendants' demurrers are overruled as to Counts I, II, III and V of plaintiff's complaint and sustained as to Count IV.

Defendants shall plead over within 20 days after notice hereof.