[No. D009574. Fourth Dist., Div. One. May 31, 1989.]

MARK OLIVER et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
REGIS BUILDERS, INC., Real Party in Interest.

## COUNSEL

Winters & Atchley and Matthew R. Rutherford for Petitioners.

No appearance for Respondent.

Lorber, Grady, Farley & Volk and Waldemar D. Halka for Real Party in Interest.

## OPINION

BENKE, J.—Regis Builders, Inc. (Regis), constructed a single-family residence in San Diego which was purchased by Mark and Lisa Oliver (Oliver). Sometime later, deficiencies began to appear and Oliver brought suit for negligence, breach of implied warranty, strict liability and negligent misrepresentation. A second amended complaint added a cause of action for fraud.

Regis brought a motion for summary adjudication of issues seeking to eliminate the cause of action for strict liability. It did not dispute it had been a developer of commercial properties during 1978 to 1980, the period in question. However, Regis argued it was not a mass producer of residential units because it had built only two single-family homes and thus was not subject to strict liability. The trial court agreed with Regis. Oliver thereafter sought relief from the trial court's ruling by way of petition for mandate. The question presented is whether the theory of strict liability applies to other than mass-produced homes. We conclude it does not.

The doctrine of strict liability was first extended to developers of residential housing in *Kriegler* v. *Eichler Homes, Inc.* (1969) 269 Cal.App.2d 224 [74 Cal.Rptr. 749], where the court found no difference between Eichler's mass production and sale of more than 4,000 residential units and the mass

production and sale of cars. Quoting extensively from *Schipper* v. *Levitt & Sons, Inc.* (1965) 44 N.J. 70 [207 A.2d 314, 325-326], the *Kriegler* court noted: " 'When a vendee buys a development house from an advertised model, as in a Levitt or in a comparable project, he clearly relies on the skill of the developer . . . that the house will be erected in reasonably workmanlike manner . . . .' " (269 Cal.App.2d at p. 228.)

Following *Kriegler,* in *Avner* v. *Longridge Estates* (1969) 272 Cal.App.2d 607, 615 [77 Cal.Rptr. 633], the doctrine of strict liability in tort was held applicable to a defendant who had developed property into a tract consisting of an unspecified number of house lots. This court thereafter applied the doctrine where the developer of a planned multiunit complex placed the complex upon an unstable bluff. (*Del Mar Beach Club Owners Assn.* v. *Imperial Contracting Co.* (1981) 123 Cal.App.3d 898 [176 Cal.Rptr. 886, 25 A.L.R.4th 336].) While single-family homes were not involved, we observed: "Although this case does not involve the mass-production of tract houses, it does involve a multiple-unit, residential, planned development complex which consists of 192 units with 27 residential buildings as well as parking structures and recreational facilities. . . . *The individual units appear to fit the classic mold of buyers of mass-produced housing.*" (*Id.* at pp. 911-912, italics added.) In finding strict liability applied, we emphasized the defendants were not occasional sellers of residential units but were in the business of developing and selling them. (*Id.* at pp. 912-913.)

An overview of the aforementioned cases reflects that in each instance, the doctrine of strict liability has been applied to defendants who were characterized as mass producers. (See *Price* v. *Shell Oil Co.* (1970) 2 Cal.3d 245, 254 [85 Cal.Rptr. 178, 466 P.2d 722]; *Hyman* v. *Gordon* (1973) 35 Cal.App.3d 769, 773-774 [111 Cal.Rptr. 262], Rest. 2d Torts, § 402A.) The doctrine has been extended no further.

Oliver suggests the New Jersey courts have been the leaders in expanding the application of strict liability to residential housing and that we should follow their lead. He cites *Patitucci* v. *Drelich* (1977) 153 N.J. Super. 177 [379 A.2d 297], contending the court there held the development of six homes was sufficient for strict liability. However, *Patitucci* involved a tract development of "at least six" lots, which is a "major subdivision" under New Jersey law. In light of New Jersey's law, the court held the case did not involve an isolated or occasional sale of a residence.[1]

Oliver also argues "mass production" is no longer required in order to apply strict liability to manufacturers of products and by analogy the same rule should apply to real estate. For this proposition, Oliver relies upon

[1] In noting the New Jersey statutes, we do not imply there is any talismanic number in this state at which the occasional sale becomes mass production and sale.

*Rawlings* v. *D. M. Oliver, Inc.* (1979) 97 Cal.App.3d 890 [159 Cal.Rptr. 119]. There, the manufacturer of a kelp drying machine argued it was not a product of mass production because the buyer had "special ordered" nine machines. The court, however, concluded the manufacturer was in the business of manufacturing and selling and therefore was not an occasional seller. The fact a special order was involved which was not sold to the general public did not insulate the manufacturer from strict liability. *Rawlings* emphasizes rather than minimizes the role of mass production as a factor in the application of strict liability.

In short, we find no case law supporting imposition of strict liability on other than "mass-produced" homes. Whether a residence falls within the category of a mass-produced home is a question which must be determined on a case-by-case basis. Here, Regis built two homes, at two different times, in two different locations. Such building is reflective of occasional construction, not mass production.

Having concluded existing case law does not provide a basis for extending the doctrine of strict liability into the occasional construction and sale of residences, it remains to be determined whether the policies underlying *Kriegler* v. *Eichler Homes, Inc., supra,* 269 Cal.App.2d 224, compel such a result. They do not. A home purchase through an occasional construction and sale does not involve the buyer reliance attending sales based upon an advertised model. Nor does it present a situation where the builder may protect himself from substantial financial loss by effectively spreading both the risk and actual costs of defective construction among a number of residences in a development. Since the rationale underlying the application of strict liability does not apply to the occasional or isolated construction and sale of a residence, we are not inclined to expand the concept beyond its current, limited application to mass-produced homes.

The petition is denied.

Kremer, P. J., and Froehlich, J., concurred.