[No. D019450. Fourth Dist., Div. One. Dec. 21, 1993.]

AERO-CRETE, INC., et al., Petitioners, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
DALE VILLAGE APARTMENT COMPANY et al., Real Parties in
Interest.

## COUNSEL

Gibbs, Eppsteiner & Stagg, Barry M. Vrevich, Greco & Traficante, Paul A. Traficante, Stephen A. Shapiro, Luna, Brownwood & Rice, James L. Clark, Cooksey, Howard, Martin & Toolen and Jon A. Hammerbeck for Petitioners.

No appearance for Respondent.

Bonar, Incorvaia, Glancy & Liuzzi, Joel L. Incorvaia, Anna M. Mueller, Thorsnes, Bartolotta, McGuire & Padilla, John F. McGuire, Jr., and Jeffrey F. LaFave for Real Parties in Interest.

**OPINION**

**WIENER, Acting P. J.**—This is a complex construction defect case brought by plaintiffs Dale Village Apartment Company and related entities (Dale Village) against Pieri-Debbas Enterprises, the developer and general contractor on an apartment building project owned by Dale Village. Various subcontractors on the project have also been sued as defendants. Petitioners are certain of those subcontractors who seek writ relief after the trial court determined that a settlement between Dale Village and Pieri-Debbas was in good faith. They raise several issues related both to the court's good faith determination and to statements it made regarding the effect of the settlement on future proceedings.

We conclude the trial court acted properly in finding the settlement to be in good faith. While the trial court is normally best served by valuing any assigned rights for the purpose of later setoffs at the time of the good faith determination, we have determined there was no mandate that it do so under the unique circumstances of this case. Finally, we explain why a prove-up hearing as to damages following Pieri-Debbas's stipulation to liability will not bind parties later determined to be indemnitors of Pieri-Debbas. Accordingly, we deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

Pieri-Debbas is a partnership with two corporate general partners, T-Bear, Inc. (solely owned by defendant James Pieri) and Debbas Construction (solely owned by defendant Nicholas Debbas). On the filing of the lawsuit by Dale Village, Pieri-Debbas tendered its defense to both its insurers and various subcontractors on the project with whom it allegedly had contractual indemnity agreements. Both the insurers and subcontractors denied responsibility and refused to defend Pieri-Debbas.

Dale Village and Pieri-Debbas later agreed to settle their lawsuit on the following terms: Pieri-Debbas stipulated to liability; a prove-up hearing would be held to establish the amount of damages; in exchange for a covenant not to execute Pieri-Debbas assigned its indemnification rights as against its insurers and the subcontractors to Dale Village. The settling parties stipulated that the value of the settlement was $50,000 representing the defense costs Pieri-Debbas had incurred but would not now recover. The assigned rights were not valued, but an obligation was imposed on Dale Village to exercise due diligence in the prosecution of the assigned rights. As is typical, the settlement was contingent on the trial court finding the agreement to be in good faith. Within two days of signing the settlement

agreement, Dale Village dismissed James Pieri and Nicholas Debbas as individual defendants without prejudice, allegedly because there was no basis for any alter ego claims.

In petitioning the court to confirm the settlement as being in good faith, Dale Village and Pieri-Debbas relied on declarations indicating that Pieri-Debbas had a negative net worth and would be unable to satisfy any judgment against it. Petitioners presented no significant contrary evidence.[1]

The trial court confirmed the settlement, relying largely, if not exclusively, on the financial condition of Pieri-Debbas. In the course of the hearing, counsel for Dale Village explained his understanding that the separate prove-up hearing would set the damages as to each individual subcontractor to the extent liability was based on their obligation to indemnify Pieri-Debbas. The trial court agreed that the subcontractors would be "stuck with the number . . . that's going to be the subject of a default prove-up case." It summarily denied the subcontractors' request to participate in the prove-up hearing.

## DISCUSSION

Petitioning subcontractors argue the trial court erred in determining that the settlement between Dale Village and Pieri-Debbas was in good faith. They also assert the court should have valued the assignment of rights received by Dale Village for the purpose of later setoff. Finally, they claim they cannot be bound by the apportionment of damages arrived at in a prove-up hearing in which they were not able to participate.

The trial court's conclusion on the good faith issue is fully supported by the record. The remaining contentions, while they raise interesting legal questions, are not ripe for review because no subcontractor has been found liable as an indemnitor or is subject to a judgment as to which a setoff would be applicable.

*Good Faith Determination*

■ Petitioners point to a series of factors they say demonstrate the settlement was not in good faith. Some factors are simply not relevant to the

[1]Declarations submitted by Pieri and Debbas in support of the motion to confirm the settlement admit to the partnership's ownership of a single commercial building but assert it is encumbered well beyond its current market value. The only evidence offered by petitioners on the financial condition of Pieri-Debbas was a two-year-old investigative memo indicating that the partnership owned two parcels of undeveloped commercial property in addition to a commercial building. The total value of the two parcels was something less than $250,000 and the memo obviously cannot demonstrate that the two parcels were not sold or otherwise disposed of in the intervening two years.

good faith determination. Others, while certainly relevant, do not overcome the trial court's pragmatic conclusion that Pieri-Debbas has no assets with which to respond to a judgment for damages.

Petitioners argue and Dale Village readily concedes that defendants' potential exposure in the case exceeds $10 million. Although they may disagree as to amount, both sides agree that the proportionate liability of Pieri-Debbas exceeds the value of the settlement. Under other circumstances this might suggest the settlement was not entered into in good faith. (See, e.g., *City of Grand Terrace* v. *Superior Court* (1987) 192 Cal.App.3d 1251, 1262 [238 Cal.Rptr. 119].) As the Supreme Court explained in the seminal case of *Tech-Bilt, Inc.* v. *Woodward-Clyde & Associates* (1985) 38 Cal.3d 488 [213 Cal.Rptr. 256, 698 P.2d 159], however, strict proportionate liability is not the sine qua non of a good faith settlement. Other relevant considerations identified by the Supreme Court include "the financial conditions . . . of settling defendants . . . ." (*Id.* at p. 499.) The court quoted from an earlier Court of Appeal decision which noted, " '[A] disproportionately low settlement figure is often reasonable in the case of a relatively insolvent, and uninsured, or underinsured, joint tortfeasor.' " (*Ibid.*, citing *Stambaugh* v. *Superior Court* (1976) 62 Cal.App.3d 231, 238 [132 Cal.Rptr. 843].)

Here, the controlling shareholders of Pieri-Debbas's two corporate general partners submitted declarations indicating that the joint venture's only asset had encumbrances exceeding its value. The only contrary suggestion by petitioners relied on documentation which was out of date and, in any event, de minimus. Petitioners do not assert that they sought and were denied adequate discovery on the issue of Pieri-Debbas's financial condition. (See, e.g., *Rankin* v. *Curtis* (1986) 183 Cal.App.3d 939, 947-948 [228 Cal.Rptr. 753].)

Petitioners also contend the settlement was not in good faith because Dale Village failed to show that James Pieri and Nicholas Debbas were without personal assets which could be tapped to satisfy an adverse judgment. Petitioners' argument is crafted as though Pieri and Debbas are general partners. As we have explained, however, they are merely the shareholders of two corporate general partners, T-Bear and Debbas Construction. The declarations by Pieri and Debbas indicate that their corporations' only assets are their respective interests in Pieri-Debbas. Petitioners presented no evidence which might justify "piercing the corporate veil" to reach the personal assets of Pieri or Debbas. Accordingly, the personal wealth of Pieri or Debbas is simply irrelevant to the good faith issue.

The evidence before the trial court showed that Pieri-Debbas was the proverbial turnip from which little if any blood was forthcoming in the event

of an adverse judgment. Under the *Tech-Bilt* standards, a settlement which recouped anything of value could be properly found to be in good faith.

## Value of the Assigned Rights

■ Petitioners argue the trial court erred in failing to value the contractual indemnity rights which Pieri-Debbas assigned to Dale Village as against its insurers and the subcontractors as part of the good faith determination. Valuation is necessary, they claim, in order to determine the amount of a setoff to which petitioners will be entitled in the event of an adverse judgment.

In the typical case, valuation of any assigned rights is necessary to determine "whether the amount of the settlement is within the reasonable range of the settling tortfeasor's proportional share of comparative liability for the plaintiff's injuries." (*Tech-Bilt, supra*, 38 Cal.3d at p. 499.) Here, however, as we have explained, the financial condition of Pieri-Debbas means that virtually any settlement would be in good faith, regardless of value. An exact calculation of the value of the assigned rights is simply unnecessary to the good faith determination.

It is true that the court in *Arbuthnot* v. *Relocation Realty Service Corp.* (1991) 227 Cal.App.3d 682 [278 Cal.Rptr. 135] suggested that the better practice would be to value all assigned rights at the time of the good faith hearing because establishing the amount of the setoffs would facilitate later full settlement of the case. (*Id.* at p. 690.) While we cannot disagree with this suggestion, we also cannot ignore the fact that the amount of a potential setoff is technically irrelevant until the nonsettling defendant's liability has been established. The fact that a known setoff figure might facilitate a settlement under certain circumstances (because it reduces uncertainty) does not mean that valuation of assigned rights becomes a mandatory duty for the trial court under all circumstances. As this court explained recently in *Erreca's* v. *Superior Court* (1993) 19 Cal.App.4th 1475 [24 Cal.Rptr.2d 156], "[V]aluation of an assignment of rights should *normally* take place at the settlement stage so that the good faith of the overall settlement may be fully evaluated." (*Id.* at p. 1499, italics added.) In the unique circumstances of this case, however, where valuation is unnecessary to assess good faith, we see no reason why the value of the assigned rights cannot be adequately determined once a finding of liability makes such a determination necessary.[2]

---

[2]Even where the actual valuation of the assignment may be made after the settlement, the value of the assignment must be determined as of the time of the settlement. (*Erreca's* v.

*Binding Effect of the Damage Findings*

■ From its comments at the good faith hearing we understand the trial court proposes to hold a prove-up hearing at which the gross amount of damages assessed against Pieri-Debbas will be shown. The method for arriving at this gross number is expected to be an aggregation of smaller subtotal damage figures for which individual subcontractors are alleged to be liable. We infer the trial court expects that to the extent individual subcontractors are found to be liable as contractual indemnitors, they will be bound pursuant to Civil Code section 2778, subdivision 5, by the applicable subtotal determined at the prove-up hearing. Relying on recent case law, petitioners assert they cannot be bound by the results of a prove-up hearing in which they were unable to participate.

Respondents correctly argue that the trial court has made no ruling on the binding effect of any damage determination on potential indemnitors. Indeed, it could not make such a ruling until a defendant has been found liable as an indemnitor. All the court has done at this point is to rule that the subcontractors may not participate in the prove-up hearing. We do not understand anyone to argue that this decision, in and of itself, is erroneous.

Nonetheless, the large number of potential indemnitors makes it highly likely that this issue will arise during the course of trial court proceedings in this case. At oral argument all counsel candidly admitted that appellate guidance in this area would be most welcome. Indeed, following oral argument the parties took the unusual step of attempting to file a stipulation that the issue is ripe for review.

When resolving appeals on a single dispositive issue we routinely advise the trial court on legal questions which will likely arise on retrial. By analogy here in this unusual writ proceeding, while we need not grant a petition for writ of mandate, we think it appropriate to offer the following comments.

The parties here are most concerned about the binding effect that an item-by-item damage calculation will have on parties later determined to be indemnitors, i.e., insurers of Pieri-Debbas and various subcontractors whose contracts included indemnity agreements. This question turns on the interpretation of Civil Code section 2778, subdivision 5, which provides: "If, after request, the person indemnifying neglects to defend the person indemnified, a recovery against the latter suffered by him in good faith, is conclusive in his favor against the former."

---

*Superior Court, supra,* 19 Cal.App.4th at p. 1498; cf. *Tech-Bilt, supra,* 38 Cal.3d at p. 499; but see *Southern Cal. Gas Co.* v. *Superior Court* (1986) 187 Cal.App.3d 1030, 1036 [232 Cal.Rptr. 320].)

Dale Village argues that the legislative purpose in enacting subdivision 5 of section 2778 was to penalize the indemnitor who wrongfully refuses to honor its contractual obligation. We agree to a point. As long as the indemnitee presents a defense, certainly the balking indemnitor should not be heard to complain that a better defense lawyer with greater resources using different tactics—the sorts of thing the indemnitor could have controlled had it accepted the defense—would have achieved a better result. (See *Xebec Development Partners, Ltd.* v. *National Union Fire Ins. Co.* (1993) 12 Cal.App.4th 501, 539 [15 Cal.Rptr.2d 726].) More, however, (or perhaps less) is involved here. In effect, Pieri-Debbas has provided no defense. Because Dale Village gave Pieri-Debbas a covenant not to execute, Pieri-Debbas had little incentive to contest liability and no incentive to challenge the amount of damages. The prove-up hearing contemplated by the trial court means there is some ceiling on the amount of damages, but the lack of an adversary to parry Dale Village's thrusts means the ceiling is palatial. Moreover, to the extent there is any discretion in allocating the items of damage among the various subcontractors, Dale Village will have every incentive to shift damages toward those subcontractors with a greater ability to pay and Pieri-Debbas will have little if any incentive to object. (See *Peter Culley & Associates* v. *Superior Court* (1992) 10 Cal.App.4th 1484, 1498 [13 Cal.Rptr.2d 624].)

We read Civil Code section 2778, subdivision 5 as being more than an undifferentiated penalty statute. Certainly, an indemnitor should not be permitted to relitigate a fair number fairly arrived at. In defining a "fair" result, however, the statute contemplates something more than a plaintiff's unbridled wish list. Only a "recovery against the [indemnitee] suffered by him in good faith" will suffice. Whatever the meaning of "good faith" in this context, it seems clear to us that an indemnitee does not "suffer" a "recovery" where it stipulates to liability in exchange for a convenant not to execute. As the court explained in *Smith* v. *State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104 [7 Cal.Rptr.2d 131], "[T]he statute plainly refers to the sort of recovery that will trigger a duty to indemnify, that is, a recovery imposing liability. The covenant not to execute shields the insured from such liability." (*Id.* at p. 1114; see also *Xebec Development, supra,* 12 Cal.App.4th at p. 537-538.) Another court has recently concluded that no "recovery" is "suffered" unless it is obtained by a judgment "after trial." (See *Peter Culley & Associates* v. *Superior Court, supra,* 10 Cal.App.4th at pp. 1495-1496.) Applying either of these principles here, the stipulation to liability by Pieri-Debbas with a prove-up of damages and a covenant not to execute does not constitute a "recovery . . . suffered" by Pieri-Debbas within the meaning of section 2778, subdivision 5.

Dale Village argues that a line of earlier cases, including cases from the California Supreme Court, adopts a much broader view of the circumstances

in which a determination of damages will be binding on an indemnitor. (See *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 239 [178 Cal.Rptr. 343, 636 P.2d 32]; *Clemmer* v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 884-886 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Bonfils* v. *Pacific Auto. Ins. Co.* (1958) 165 Cal.App.2d 152, 160-163 [331 P.2d 766].) Although both *Samson* and *Clemmer* held that an insurer which failed to defend an insured was bound by the damage determination in the action it failed to defend, neither case mentions Civil Code section 2778 or purports to interpret subdivision 5 of that statute. It is fundamental that a case is not authority for a proposition not considered and decided. (See, e.g., *In re Tartar* (1959) 52 Cal.2d 250, 258 [339 P.2d 553].) Although *Bonfils* does cite Civil Code section 2778, subdivision 5 (see 165 Cal.App.2d at p. 160), it discusses the statute only generally and does not attempt to interpret the "recovery . . . suffered . . . in good faith" language which forms the basis for the courts' conclusions in *Smith* and *Peter Culley*. In any event, *Bonfils* involved a default judgment and not a stipulation to liability with a covenant not to execute.

Frankly we are sympathetic to Dale Village's claim that some sort of "hammer" is needed to encourage indemnitors to honor their contractual responsibilities. It must be remembered, however, that even if the indemnitor is not bound by the amount of damages arrived at as part of a settlement, that amount is presumptively valid and the burden shifts to the indemnitor to show that a lesser amount should be awarded.[3] (See *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791 [244 Cal.Rptr. 655, 750 P.2d 297].) In addition, because of the special duties owed by insurers to insureds, an insurer which acts unreasonably in failing to defend its insured may be liable for enhanced tort damages in a bad faith cause of action. (See generally, *California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54-55 [221 Cal.Rptr. 171]; see also, e.g., *Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796] [attorney fees incurred in obtaining benefits due under the policy]; *State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 527-528 [88 Cal.Rptr. 246] [emotional distress damages];[4] *Tibbs* v. *Great American Ins. Co.* (9th Cir. 1985) 755 F.2d 1370, 1375 [punitive damages].) While "mere" contractual indemnitors do not assume the tort damages risk, they would be liable for the indemnitee's attorney fees if it were shown that they breached their contractual obligations. (See *Arenson* v. *National Auto. & Cas. Ins. Co.* (1957) 48 Cal.2d 528, 537 [310 P.2d 961].) Thus the issue is not the

[3]We offer no view on whether the covenant not to execute in this case precludes even presumptive effect of the judgment.

[4]*State Farm* holds that emotional distress damages are recoverable against an insurance company which wrongfully refuses to defend regardless of whether the action sounds in tort or contract.

existence of the "hammer" but rather its size. Consequently, notwithstanding our empathy with the trial court on this issue, we must defer to the Legislature for appropriate statutory amendment if it should conclude that the existing disincentives are inadequate. For the reasons we have set forth, we conclude in the circumstances of this case there is no basis for interpreting Civil Code section 2778, subdivision 5 as requiring that indemnitors be bound.

## DISPOSITION

Petition denied.

Work, J., and Froehlich, J., concurred.