[No. B096217. Second Dist., Div. Six. Apr. 29, 1997.]

RICHARD B. FLECK, Plaintiff, Cross-complainant and Respondent, v. BOLLINGER HOME CORPORATION, INC., et al., Defendants and Respondents;
PRUDENTIAL INSURANCE COMPANY OF AMERICA, Cross-defendant and Appellant.

**[Opinion certified for partial publication.†]**

†Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for partial publication. The portions of this opinion to be deleted from publication are identified as those portions between double brackets, e.g., [[/]].

928

**COUNSEL**

Norman, Cormany, Hair & Compton, William H. Hair, Michael C. O'Brien and Susan M. Seemiller for Cross-defendant and Appellant.

Lang, Hanigan & Carvalho, John D. Lang and Arthur Carvalho, Jr. for Plaintiff, Cross-complainant and Respondent and for Defendants and Respondents.

## OPINION

**GILBERT, J.**—A land developer sells a lot which contains a residential building pad. The lot is eventually sold to a builder who constructs a house on the pad. Plaintiff buys the house. The house suffers damage from subsidence. The 10-year statute of limitations prevents plaintiff from suing the developer. Plaintiff sues the builder. The builder cross-complains for indemnity against the developer.

May builder assign its cross-complaint to plaintiff? Yes. May the trial court award damages on the cross-complaint directly to plaintiff? Yes.

Here the trial court ruled that plaintiff is entitled to judgment as an assignee of a party's cross-complaint for equitable indemnity. We affirm.

### FACTS

The Bollinger Home Corporation, Inc. (the Bollinger parties)[1] built a custom warranted home for Richard B. Fleck and Elizabeth Fleck (Fleck)[2] on a building pad developed by the Prudential Insurance Company of America (Prudential) in the 1970's. Prudential left uncompacted fill on the lot causing cracking and other damage to the home.

In 1992, Fleck sued the Bollinger parties, Prudential and others for the damage. Prudential moved for summary judgment on Fleck's complaint asserting that the 10-year statute of limitations for latent property defects had run as to him. (Code Civ. Proc., § 337.15.) The trial court granted Prudential's motion and entered a judgment which we affirmed in 1995. (*Fleck* v. *Prudential Ins. Co. of America* (June 27, 1995) B082767 [nonpub. opn.].)

The Bollinger parties cross-complained against Prudential and others for implied comparative equitable indemnity. The Bollinger parties stipulated to liability on Fleck's complaint and assigned their cross-complaint for indemnity to Fleck in a settlement agreement. Fleck agreed to pay the Bollinger parties up to $40,000 of the first moneys he might receive from any other existing party to the action.

---

[1]The Bollinger parties consist of Paul and Louise Bollinger, Bollinger Home Corporation, Inc., and Bollinger Construction, Inc.

[2]Elizabeth Fleck died and her estate is not a party to this appeal.

The trial court ruled that the assignment of the Bollinger cross-complaint was proper, but that the stipulated settlement was not made in good faith and did not bind Prudential. The agreement provided that if the settlement were not approved, Fleck would defend and indemnify the Bollinger parties against all related cross-complaints against them.

Fleck proceeded to trial.[3] On special verdicts, the jury found that the Bollinger parties were manufacturers of custom homes who breached their warranty to construct the Fleck home in a reasonably workmanlike manner. The jury found that the Bollinger parties were retail sellers of building lots, that there was a defect in the manufacture of the Fleck lot which existed at the time it left Prudential's possession through the time Fleck acquired the lot.

The jury found that the tort damages suffered by Fleck were completely caused by the defective building lot. Sixty percent of the fault for damages was attributable to the negligence of Prudential. Forty percent of the fault was attributable to the negligence of another party. The jury found that Fleck acted reasonably to avoid or minimize the loss he suffered, and determined that Fleck suffered monetary damages in the total sum of $1,134,977.

The trial court issued judgment in favor of Fleck and against the Bollinger parties in the total sum of $1,129,977, costs and attorneys' fees. The court concluded that Fleck, as the assignee of the Bollinger parties' cross-complaint for equitable indemnity against Prudential, is entitled to judgment directly against Prudential for the full amount of the judgment, costs and attorneys' fees.

### DISCUSSION

 Prudential argues that the Bollinger parties' assignment of their cross-complaint for indemnity does not entitle Fleck to the direct money judgment he obtained here because the Bollinger parties never suffered an indemnifiable loss through settlement or judgment. (*Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital* (1994) 8 Cal.4th 100, 110 [32 Cal.Rptr.2d 263, 876 P.2d 1062]; Civ. Code, §§ 953, 954, 1458; *Valley Circle Estates* v. *VTN Consolidated, Inc.* (1983) 33 Cal.3d 604, 613-615 [189 Cal.Rptr. 871, 659 P.2d 1160]; *Christian* v. *County of Los Angeles* (1986) 176 Cal.App.3d 466, 471-472 [222 Cal.Rptr. 76].)

 Prudential asserts that the assignment of the cross-complaint before the Bollingers' liability had been incurred or paid violates indemnity principles, circumvents the spirit of the statute of limitations and permits Fleck

---

[3]Fleck voluntarily dismissed all other causes of action against the Bollinger parties.

to obtain a double recovery. Prudential opines that neither the law nor substantial evidence supports the judgment for breach of implied warranty and strict liability against the Bollinger parties. We disagree with Prudential's positions.

### The Validity of Fleck's Complaint and the Assignment of the Bollinger Parties' Cross-complaint

Prudential argues that the Bollinger parties had nothing to assign to Fleck. We disagree.

A civil action is "prosecuted . . . for the . . . redress . . . of a wrong." (Code Civ. Proc., § 30.) "A civil action arises out of . . . [¶] . . . [¶] 2. [a]n injury." (Code Civ. Proc., § 25.) An injury to property "consists in depriving its owner of the benefit of it, which is done by . . . deteriorating . . . it." (Code Civ. Proc., § 28.) One may prosecute a civil action to obtain a remedy for the harm done to one's property under various theories against various defendants.

A cause of action distinct from one for injury to property arises when defendants seek implied equitable indemnity. The separate cause for equitable indemnity lies to ensure that damages arising from the underlying action are proportionate to the fault attributable to the respective tortfeasors. Concurrent tortfeasors should pay their fair share according to the comparative fault of each tortfeasor. (*Time for Living, Inc.* v. *Guy Hatfield Homes/All American Development Co.* (1991) 230 Cal.App.3d 30, 38-39 [280 Cal.Rptr. 904].)

Direct actions by consumers and actions by tortfeasors for indemnity against joint tortfeasors who cause a wrong to real property arising out of a latent deficiency are barred by the 10-year statute of limitations set forth in Code of Civil Procedure section 337.15. Generally, causes of action for indemnity do not accrue until the prospective indemnitee has paid the judgment or settlement to be indemnified. (*Time for Living, Inc.* v. *Guy Hatfield Homes/All American Development Co.*, *supra*, 230 Cal.App.3d at p. 36.)

Code of Civil Procedure section 337.15, subdivision (c) alters the rule which bars independent actions for indemnity, unless brought within 10 years, even if the indemnitee has not yet paid on the judgment. (*Time for Living, Inc.* v. *Guy Hatfield Homes/All American Development Co.*, *supra*, 230 Cal.App.3d at p. 36.) The claim for indemnity may be brought by way of cross-complaint in the action filed against the prospective indemnitee

after the 10 years has run against the former tortfeasor. The claim must be transactionally related to the conduct of the former tortfeasor. (*Id.*, at pp. 36-39; *Valley Circle Estates* v. *VTN Consolidated, Inc.*, *supra*, 33 Cal.3d 604.)

Because Prudential left the uncompacted fill on the lot in the 1970's, Fleck could not directly proceed against Prudential on the merits because of the 10-year statute of limitations. (Code Civ. Proc., § 337.15.) But, Fleck could proceed on his ripe, timely action against the Bollinger parties and others. The action against the Bollinger parties is related to Prudential's misfeasance. (*Time for Living, Inc.* v. *Guy Hatfield Homes/All American Development Co.*, *supra*, 230 Cal.App.3d at pp. 38-39.) Whether indemnity is appropriate depends on the equities of the case. (See generally, *Western Steamship Lines, Inc.* v. *San Pedro Peninsula Hospital*, *supra*, 8 Cal.4th at p. 109.)

The Bollinger parties bore potential liability for damages to Fleck. Therefore, they had the right to cross-complain against Prudential for the distinct right to equitable indemnity pursuant to Code of Civil Procedure section 337.15, subdivision (c) to recoup damages which might be assessed against them by any previous tortfeasors who caused the subsidence.

### The Assignment

 Property includes things in action, evidences of debt and money. (Code Civ. Proc., § 17.) "A thing in action, arising out of the violation of a right of property, or out of an obligation, may be transferred by the owner." (Civ. Code, § 954.) "An action . . . does not abate by the transfer of an interest in the action . . . . The action . . . may be continued in the name of the original party, or the court may allow the person to whom the transfer is made to be substituted in the action or proceeding." (Code Civ. Proc., § 368.5.)

The policy in California is to permit parties to assign choses in action for wrongs done to property. (See generally, *Bush* v. *Superior Court* (1992) 10 Cal.App.4th 1374, 1381 [13 Cal.Rptr.2d 382]; *Webb* v. *Pillsbury* (1943) 23 Cal.2d 324, 327-328 [144 P.2d 1, 150 A.L.R. 504].) There is no reason why an improver of property which has a latent defect caused by a former tortfeasor may not assign its cross-complaint for indemnity before it may be found liable for damages. (See *Aero-Crete, Inc.* v. *Superior Court* (1993) 21 Cal.App.4th 203 [25 Cal.Rptr.2d 804].) That is what occurred here. Such cross-complaints reduce the number of actions filed as to the primary rights at issue. (*Valley Circle Estates* v. *VTN Consolidated, Inc.*, *supra*, 33 Cal.3d at

pp. 613-615; and see *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744 [163 Cal.Rptr. 585, 608 P.2d 673] [separate action need not be filed for equitable indemnity].)

The trial court did not err in permitting the Bollinger parties to assign to Fleck their distinct cause of action for equitable indemnity for the contingent damages it faced as a result of the litigation. (See *Herrero* v. *Atkinson* (1964) 227 Cal.App.2d 69, 78-79 [38 Cal.Rptr. 490]; *B.F.G. Builders* v. *Weisner & Coover Co.* (1962) 206 Cal.App.2d 752, 760-763 [23 Cal.Rptr. 815].) This is so even though actions for indemnity do not typically accrue for the purposes of the statute of limitations until payment of a judgment or settlement.

After the trial court refused to approve the settlement between Fleck and the Bollinger parties, Fleck had to prove both liability and damages against the Bollinger parties, Prudential and others for the injuries to his property. The trial court instructed the jury accordingly. Because Fleck had not given the Bollinger parties a covenant not to execute if liability were found against them, they remained at risk to pay their comparative fault in the instant situation. (Cf. *Christian* v. *County of Los Angeles*, *supra*, 176 Cal.App.3d 466.)

Fleck could not receive the windfall of a double recovery, because the trial court disapproved the settlement between Fleck and the Bollinger parties and ruled that the agreement would only bind the Bollinger parties. In one sense, the instant assignment to Fleck became akin to the right of subrogation. (See *Bush* v. *Superior Court*, *supra*, 10 Cal.App.4th at pp. 1380-1381; *People* ex rel. *Dept. of Transportation* v. *Superior Court*, *supra*, 26 Cal.3d at pp. 758-759.) Fleck was forced to fully litigate both liability and damages. If the Bollinger parties had not assigned their cause of action for equitable indemnity to Fleck, they would have been entitled to indemnification from Prudential for all the damages for which they were found liable to Fleck.

The jury found that the Bollinger parties were manufacturers of custom homes and retail sellers of building lots who breached their warranty to construct the Fleck home in a reasonably workmanlike manner. The jury determined, however, that the entire cause of the damages assessed was due to Prudential's and another party's negligence in creating the defective building pad.

The primary purpose of the Code of Civil Procedure section 337.15, subdivision (c) is to ensure that the 10-year statute does not insulate the previous tortfeasor actually at fault when another, subsequent tortfeasor is timely sued and found liable, as here. The statute ensures the right to

indemnification in proportion to fault while obviating the need for separate, multiple suits. Equity and judicial economy dictate that Fleck need not file additional proceedings to collect on the instant judgment.

The Bollinger parties' cross-complaint against Prudential, assigned to Fleck, effectively seeks declaratory relief which would also permit direct relief to Fleck. (See generally, *Marlow* v. *Campbell* (1992) 7 Cal.App.4th 921, 927 [9 Cal.Rptr.2d 516]; Code Civ. Proc., § 1060.) The Bollinger parties' cross-complaint asserts that Fleck is damaged by Prudential's negligence in grading the property. The Bollinger parties are also at risk of suffering damages due to other cross-actions. In substance, the Bollinger parties alleged that Prudential should be responsible for any damages suffered by them.

### The Law and Substantial Evidence Support the Findings

### Strict Liability

■ Prudential asserts that the trial court erred in using the phrase "substantial numbers" instead of the word "mass" in its instruction describing who constitutes a manufacturer for purposes of strict liability in tort.[4] Instructions are sufficient if they fairly and accurately state the necessary legal principles when read as a whole. A party is not entitled to have the substance of instructions given in the particular language desired. (*Harland* v. *State of California* (1977) 75 Cal.App.3d 475, 486 [142 Cal.Rptr. 201]; *Byrum* v. *Brand* (1990) 219 Cal.App.3d 926, 939 [268 Cal.Rptr. 609]; and see *Soule* v. *General Motors Corp.* (1994) 8 Cal.4th 548, 580 [34 Cal.Rptr.2d 607, 882 P.2d 298].)

One may not be held liable for manufacturing homes or selling lots under the doctrine of strict liability unless one can be deemed a "mass producer" of such homes. (*Oliver* v. *Superior Court* (1989) 211 Cal.App.3d 86 [259 Cal.Rptr. 160]; *La Jolla Village Homeowners' Assn.* v. *Superior Court* (1989) 212 Cal.App.3d 1131, 1144 [261 Cal.Rptr. 146]; but see *Peterson* v. *Superior Court* (1995) 10 Cal.4th 1185, 1188-1190, 1200, 1210 [43 Cal.Rptr.2d 836,

---

[4]The trial court gave the following instruction as follows: "For purposes of determining whether the Bollinger Parties would have been liable to Mr. Fleck for a defect in the manufacture of the Fleck Property, you must determine whether the Bollinger Parties were a manufacturer or a seller of residential properties. [¶] A Manufacturer of residential properties is one who produces residential properties in substantial numbers for a business purpose and under circumstances such that the buyers would rely upon the manufacturer's skill that the properties were constructed properly and in a workmanlike manner. [¶] For purposes of determining whether the Bollinger Parties would have been liable to Mr. Fleck as a seller for a defect in the manufacture of the Fleck Lot, you must determine whether the Bollinger Parties were in the business of selling residential properties.

899 P.2d 905] [as to landlords and hotel proprietors who are not involved in construction of building].) The *Oliver* court explained that there is no talismanic number of properties which establishes when one is in the business of manufacturing and selling homes. "Whether a residence falls within the category of a mass-produced home is a question which must be determined on a case-by-case basis." (*Oliver, supra,* at p. 89 [rejecting denomination as mass producer one who built two homes at different times in different locations].)

Here, the Bollinger parties built and sold 11 homes to the general public in the general area between 1984 and 1989 in accord with Prudential's business plan. The trial court did not abuse its discretion in deciding to use the phrase "substantial numbers" in lieu of the word "mass." The phrase accurately defines the predicate for strict liability in tort here.

[[*Warranty*]]*

CONCLUSION

The Bollinger parties were not required to bring a separate action for indemnity nor to prosecute their own cross-complaint. There is no sound reason in law or equity why damages must be funneled through the Bollinger parties to Fleck. The Bollinger parties' assignment to Fleck carried with it the burden to prove liability and damages. Under these facts, the trial court properly awarded the damages directly to Fleck.

The trial court did not abuse its discretion in awarding attorneys' fees to Fleck as the prevailing party in the action inasmuch as it arose out of the written contract of sale for the home which contains express provisions for such fees. (Civ. Code, § 1717, subd. (a); *Lerner* v. *Ward* (1993) 13 Cal.App.4th 155 [16 Cal.Rptr.2d 486]; *Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338 [5 Cal.Rptr.2d 154].)

The judgment and postjudgment orders are affirmed. Costs to respondent.

Stone (S. J.), P. J., and Yegan, J., concurred.

. A petition for a rehearing was denied May 27, 1997, and appellant's petition for review by the Supreme Court was denied July 30, 1997. Kennard, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 926.