[No. E049927. Fourth Dist., Div. Two. Jan. 21, 2011.]

SEARLES VALLEY MINERALS OPERATIONS INC., Plaintiff and Appellant, v.
RALPH M. PARSONS SERVICE COMPANY et al., Defendants and Respondents.

COUNSEL

Haight Brown & Bonesteel, William O. Martin, Jr., R. Bryan Martin, Jules S. Zeman and Stephenie M. Alexander for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Candace L. Matson and Robert T. Sturgeon for Defendants and Respondents.

OPINION

**HOLLENHORST, J.**—In this contract indemnity action, plaintiff and appellant Searles Valley Minerals Operations Inc. (Searles) appeals the judgment of dismissal entered in favor of defendants and respondents Ralph M. Parsons Service Company and Parsons Infrastructure & Technology Group, Inc. (Parsons), following an order sustaining Parsons's demurrer, without leave to amend, to Searles's cause of action for express indemnity.

Searles contends it adequately alleged a cause of action for express indemnity by alleging that Parsons was required, under an indemnity contract between Parsons and Kerr-McGee Chemical Corporation (KM), to provide KM with a defense and indemnify KM for losses arising from a wrongful death action against KM, Parsons, and Parsons's subcontractor. Searles argues that, as an assignee of KM's indemnity rights, it was entitled to reimbursement for paying KM's defense costs.

While there appears to be no case law directly on point, we conclude that an assignee of contract indemnification rights stands in the shoes of the indemnitee. Therefore, if the indemnitor refuses to pay an indemnitee's defense costs, the indemnitee, and in turn the assignee, can pay the costs and

seek reimbursement from the indemnitor. Searles, as KM's assignee, was entitled under the indemnity agreement to recover defense costs it paid on KM's behalf. The trial court thus erred in sustaining, without leave to amend, Parsons's demurrer to Searles's cause of action for express indemnity, and we reverse the judgment of dismissal.[1]

## 1.   Factual and Procedural Background

Decedent, Michael Todd Moore, was killed while working at Searles's soda ash processing plant in Trona (the Argus plant). In a wrongful death action, Moore's heirs sued KM, Parsons, and Parsons's subcontractor, which manufactured parts for the plant's pneumatic conveyor system. Parsons rejected KM's tender of defense. Searles provided KM with a defense.

*Searles's Complaint Against Parsons for Indemnity*

After judgment was entered in the underlying wrongful death action (the Moore lawsuit), Searles filed a complaint seeking reimbursement from Parsons for KM's defense costs. Searles's complaint included causes of action for (1) express indemnity, (2) equitable indemnity, (3) subrogation, and (4) declaratory relief.

Searles's complaint contains the following allegations. In 1974, KM entered into a contract with Parsons for the design and construction of the Argus plant, located on property owned by KM. The design and construction included providing a pneumatic conveyor system. The construction contract contained an indemnity provision (paragraph 17) in which Parsons agreed to defend and indemnify KM for personal injury or death arising out of Parsons's or its subcontractors' negligence in connection with work Parsons or its subcontractors performed pursuant to the construction contract. Paragraph 61 of the construction contract permitted KM to assign the agreement.

Searles, formerly known as North American Chemical Company, purchased the Argus plant from KM. In connection with the purchase, Searles agreed to indemnify KM for any accidents or injuries resulting in KM being sued. Under the purchase agreement, KM, in turn, assigned to Searles its

---

[1] Parsons requests this court to grant judicial notice of Searles's petition for writ of mandate, Parsons's opposition to the petition, and this court's order denying the petition. Searles opposes Parsons's judicial notice request on the ground the documents are irrelevant. We grant Parsons's request for judicial notice of the three documents, although the documents have little, if any, relevance since the writ petition was summarily denied and pertains to the ruling on the motion for reconsideration, not the demurrer. (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

rights, including KM's indemnity rights against Parsons under the construction contract.

In 2001, one of Searles's employees, Michael Moore, was killed while working at the Argus plant. At the time, Moore was attempting to remove the door of the pneumatic conveyor system. Moore's heirs filed a wrongful death complaint against KM, Parsons, and Parsons's subcontractor. KM tendered its defense to Searles and to Parsons. Searles accepted KM's defense, whereas Parsons declined it.

In 2004, the Moore plaintiffs, Searles, and Parsons entered into a release and assignment agreement and addendum, wherein it was agreed that all potential claims for indemnity, apportionment, and contribution, other than a pending workers' compensation complaint in intervention, would not be extinguished by the judgment entered in the Moore lawsuit.

The jury in the trial on the Moore lawsuit awarded the Moore plaintiffs approximately $6.75 million in damages. The jury assigned no fault to KM or Parsons. The jury found Parsons's subcontractor 25 percent at fault and Searles 75 percent at fault.

Searles incurred over $800,000 in attorney fees, costs, and expenses from providing KM with a defense in the underlying Moore lawsuit.

Searles alleges in the first cause of action for express indemnity that, under paragraph 17 of the construction contract between KM and Parsons, Parsons agreed to indemnify KM from all claims and liability for death arising out of Parsons's negligence. The damages claimed by the Moore plaintiffs were caused in part by Parsons and arose out of the performance of its obligations under the construction contract. Under the agreement, Parsons agreed it would be liable for KM's defense in the event of a dispute with a third party regarding work performed by Parsons. Searles, on behalf of KM, retained legal counsel to defend KM in the underlying action brought by the Moore plaintiffs. Searles is therefore entitled to recover KM's defense costs.

In the declaratory relief cause of action, Searles alleges that, as assignee of KM's rights against Parsons under paragraph 17, Searles is entitled to recover defense costs Searles incurred on KM's behalf in defending KM in the underlying action under Civil Code section 2778, subdivisions 4 and 5.[2]

---

[2] All further statutory references are to the Civil Code unless otherwise indicated.

*Parsons's Demurrer*

In March 2009, Parsons filed a demurrer to Searles's complaint. As to the cause of action for express indemnity, Parsons argued that Searles failed to allege sufficient facts since there were no allegations that KM suffered any damage. Searles, rather than KM, paid for KM's defense. Searles filed an opposition, arguing that, as KM's assignee under the construction contract, Searles was entitled to recover KM's defense expenses.

The trial court heard and sustained, without leave to amend, the demurrer to the first cause of action for express indemnity and the fourth cause of action for declaratory relief. The court overruled the demurrer to the second cause of action for equitable indemnity and third cause of action for subrogation.

After the trial court denied Searles's motion for reconsideration of the ruling, Searles filed a petition for writ of mandate, requesting this court to direct the trial court to vacate its order denying Searles's motion for reconsideration and grant the motion. This court summarily denied Searles's writ petition, noting that: " 'A trial court's order is affirmed if correct on any theory, even if the trial court's reasoning was not correct.' "

Searles filed a request for dismissal of the remaining second and third causes of action, and thereafter the trial court entered a judgment of dismissal of the action with prejudice.

## 2. Discussion

Searles contends the trial court erred in sustaining, without leave to amend, Parsons's demurrer to the first cause of action for express indemnity. The trial court stated the demurrer was sustained on the ground that, although Searles, as KM's assignee, "steps into [KM]'s shoes," "[a]ttorney's fees and costs are not expressly set forth in the [KM]/Parsons' indemnification agreement and do not constitute legal damages."

On appeal, the parties acknowledge this rationale is incorrect because paragraph 17 provides for a defense. Also, in an indemnification action, if the indemnity agreement provides for a defense which is not provided, attorney fees and costs are considered recoverable legal damages. Parsons argues the ruling is nevertheless correct because Searles is not entitled to reimbursement of KM's attorney fees under paragraph 17, since KM did not incur any loss.

"In reviewing a judgment of dismissal after a demurrer is sustained without leave to amend, we must assume the truth of all facts properly pleaded by the plaintiffs, as well as those that are judicially noticeable." (*Howard Jarvis Taxpayers Assn. v. City of La Habra* (2001) 25 Cal.4th 809, 814 [107 Cal.Rptr.2d 369, 23 P.3d 601].) Here, the issue as to whether the complaint sufficiently alleges an action for express indemnity is purely legal. "Matters presenting pure questions of law, not involving the resolution of disputed facts, are subject to the reviewing court's independent or de novo review. [Citation.]" (*Diamond Benefits Life Ins. Co. v. Troll* (1998) 66 Cal.App.4th 1, 5 [77 Cal.Rptr.2d 581] [Fourth Dist., Div. Two].)

The issue here is whether the fact that Searles paid KM's defense expenses, after Parsons rejected KM's tender of defense, precludes Searles from recovering KM's defense costs, as assignee of KM's indemnity rights, since KM did not incur any out-of-pocket losses.

In paragraph 17, Parsons agreed to indemnify KM as follows: "Contractor [Parsons], agrees that it will, at its sole cost and expense, defend, indemnify and save Owner [KM], its subsidiaries, and their officers and employees, harmless from and against any and all claims, demands, causes of action and liabilities for loss of use or damage to property . . . or for bodily injury, personal injury or death arising out of Contractor's (or its subcontractor's) negligence (including, as respect bodily injury, personal injury or death, the contributory negligence of Owner [KM]) in connection with any work which Contractor (or its subcontractors) shall perform pursuant to this Agreement or any operations or activities of Contractor (or its subcontractors), in connection therewith."

This provision entitled KM, as indemnitee, to a defense and indemnification by Parsons, the indemnitor, for any liability arising out of Parsons's or its subcontractors' negligence in connection with work Parsons or its subcontractors performed in constructing the chemical plant owned by KM, and later owned by Searles. (*Crawford v. Weather Shield Mfg., Inc.* (2008) 44 Cal.4th 541, 553 [79 Cal.Rptr.3d 721, 187 P.3d 424] (*Crawford*).)

■ As explained in *Crawford*, section 2778 "first provides that a promise of *indemnity* against claims, demands, or liability 'embraces the *costs of defense* against such claims, demands, or liability' insofar as such costs are incurred reasonably and in good faith. (§ 2778, subd. 3, italics added.) Second, the section specifies that the indemnitor 'is bound, on request of the [indemnitee], *to defend* actions or proceedings brought against the [indemnitee] in respect to the matters embraced by the indemnity,' though the indemnitee may choose to conduct the defense. (*Id.*, subd. 4, italics added.) Third, the statute declares that if the indemnitor declines the indemnitee's

tender of defense, 'a recovery against the [indemnitee] suffered by him in good faith, is conclusive in his favor against the [indemnitor].' (*Id.*, subd. 5.)" (*Crawford, supra*, 44 Cal.4th at p. 553.)

Here, KM tendered its defense to Parsons, Parsons rejected KM's tender of defense, Searles paid for KM's defense, and the lawsuit against KM and other defendants resulted in Parsons's subcontractor being found 25 percent at fault. Under section 2778, subdivisions 3 and 4, KM was entitled under the indemnity agreement to a defense from Parsons and, since Parsons did not provide a defense, KM was entitled to recover its defense costs, assuming they were incurred in good faith. (*Crawford, supra*, 44 Cal.4th at pp. 553, 555.)[3]

Parsons argues that under subdivision 2 of section 2778, although Parsons owed KM a duty to defend under the indemnitee agreement, Parsons was not required to reimburse Searles for any of KM's defense costs because KM did not pay them. Subdivision 2 of section 2778 states: "2. Upon an indemnity against claims, or demands, or damages, or costs, expressly, or in other equivalent terms, the person indemnified is not entitled to recover without payment thereof . . . ." Parsons claims this provision prohibited KM from recovering the cost of its defense because KM did not pay for its defense. But subdivision 2 does not bar Searles from recovering KM's defense costs, because, just as KM had a right to reimbursement for its own defense after Parsons declined KM's tender of defense, Searles, as assignee of KM's indemnity rights, had the right to pay for KM's defense after Parsons rejected KM's tender, and recover the cost of paying for it.

■ As the court in *Crawford* notes: "One can only indemnify against 'claims for damages' that have been resolved against the indemnitee, i.e., those as to which the indemnitee has actually sustained liability or paid damages. Indemnification, after all, is the act of saving another from the legal *consequence* of an act. (§ 2772.) Hence, a clause requiring [the indemnitor] to indemnify [the indemnitee] 'against' defined claims clearly indicated that the indemnity obligation would apply only if [the indemnitee] ultimately incurred such a legal consequence as a result of covered claims." (*Crawford, supra*, 44 Cal.4th at p. 559.) Here, Searles, as KM's assignee, incurred KM's defense costs covered under the indemnity agreement.

---

[3] Subdivisions 3 and 4 of section 2778 provide:

"3. An indemnity against claims, or demands, or liability, expressly, or in other equivalent terms, embraces the costs of defense against such claims, demands, or liability incurred in good faith, and in the exercise of a reasonable discretion;

"4. The person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses, if he chooses to do so . . . ."

*United States Elevator Corp. v. Pacific Investment Co.* (1994) 30 Cal.App.4th 122 [35 Cal.Rptr.2d 382] and *County of San Joaquin v. Stockton Swim Club* (1974) 42 Cal.App.3d 968 [117 Cal.Rptr. 300], cited by Searles for the proposition that Searles is entitled to recover KM's defense costs, provide little, if any, guidance here since the courts did not address the issue of whether an assignee of indemnity rights is entitled to recover attorney fees it paid on behalf of the assignor. The court in *United States Elevator Corp.* merely held that under section 2778, subdivision 4, an indemnitor generally must defend an indemnitee upon tender of the defense relating to claims embraced within the indemnity agreement, and failure to do so imposed on the indemnitor the duty to pay the indemnitee's defense costs. (*United States Elevator Corp. v. Pacific Investment Co., supra,* at pp. 127–128.) Likewise, *County of San Joaquin v. Stockton Swim Club, supra,* at page 973 only addresses in a cursory fashion the right to recover defense costs incurred after an indemnitor rejects a proper tender of defense.

The question here is whether, for purposes of indemnity, the "indemnitee" ultimately incurred "a legal consequence as a result of covered claims." (*Crawford, supra,* 44 Cal.4th at p. 559.) It is undisputed that KM did not incur any attorney fees or other losses. Therefore KM is not entitled to recover the fees, since it did not pay them. But Searles, which was assigned KM's indemnification rights, did incur KM's attorney fees and therefore is entitled to recover them.

As the court in *Johnson v. County of Fresno* (2003) 111 Cal.App.4th 1087, 1096 [4 Cal.Rptr.3d 475] (*Johnson*) explains, an assignee stands in the assignor's shoes: "An assignment carries with it all the rights of the assignor. [Citations.] 'The assignment merely transfers the interest of the assignor. The assignee "stands in the shoes" of the assignor, taking his rights and remedies, subject to *any defenses* which the *obligor* has against the assignor prior to notice of the assignment.' [Citation.] Once a claim has been assigned, the assignee is the owner and has the right to sue on it. ([Citation]; Code Civ. Proc., § 368.5 [action or proceeding does not abate by the transfer of an interest].) In fact, once the transfer has been made, the assignor lacks standing to sue on the claim. [Citation.]"

Here, KM's rights to a defense and indemnification were allegedly transferred to Searles by virtue of the assignment of KM's indemnification rights under the construction contract to Searles. Thus, KM's right to Parsons providing KM with a defense or, alternatively, to Parsons paying KM's defense costs, transferred to Searles. Parsons argues KM did not incur any defense costs since Searles paid for KM's defense, and therefore Parsons did

not have to pay anything under the indemnification agreement. We disagree. The fact that Searles paid KM's defense costs, after Parsons refused to do so, did not absolve Parsons of its obligation to pay KM's defense costs simply because KM did not literally pay the fees.

In *Johnson*, the court held the assignee of indemnification rights was entitled to indemnification recovery, even though the assignor never paid the underlying judgment entered against the assignor and thus did not incur any out-of-pocket loss. The *Johnson* court noted that "[l]iteral payment of the judgment by [the indemnitee] is not required." (*Johnson, supra*, 111 Cal.App.4th at p. 1094.)

We recognize that *Johnson*, as well as *Fleck v. Bollinger Home Corp.* (1997) 54 Cal.App.4th 926 [63 Cal.Rptr.2d 407], also relied on by Searles, are distinguishable because in those cases there was a judgment entered against the indemnitee, which could be construed as a loss, unlike in the instant case in which a judgment was not entered against KM. Nevertheless, *Johnson* and *Fleck* support the proposition that an assignee of indemnity rights is entitled to assert the indemnitee's rights to indemnity recovery even though the indemnitee has not suffered any actual monetary loss.

*Essex Ins. Co. v. Five Star Dye House, Inc.* (2006) 38 Cal.4th 1252 [45 Cal.Rptr.3d 362, 137 P.3d 192] (*Essex*) also supports this proposition. In *Essex*, the court held that the assignee of an insured's right to a defense was entitled to recover attorney fees the assignee incurred in seeking recovery of the insured's insurance policy benefits.

We recognize *Essex* is distinguishable in that it involves an insurance bad faith action, rather than a contract indemnity claim, and the insured sustained losses, including defense costs and a judgment entered against him. In addition, we recognize insurance indemnity law differs from contract indemnity law. (*Crawford, supra*, 44 Cal.4th at p. 552.) Nevertheless, *Essex* is instructive in its discussion of assigned rights to attorney fees.

In *Essex*, a commercial dryer was damaged when it fell while being transported to Five Star Dye House, Inc. (Five Star), by Luis Sanchez's trucking company. Five Star sued Sanchez for negligence. Sanchez tendered his defense to his liability insurance carrier, Essex Insurance Company (Essex). Essex denied coverage and refused to defend Sanchez. Sanchez paid for his own defense, and judgment was entered against him.

Sanchez then assigned to Five Star his insurance bad faith claims against Essex, including Sanchez's claim that Essex failed to provide a defense or indemnify Sanchez. Essex filed a lawsuit seeking a declaration that it did not

have a duty to defend Sanchez in the underlying action. (*Essex, supra*, 38 Cal.4th at p. 1256.) The trial court found that Essex committed bad faith by not defending Sanchez but denied Five Star's request to recover its attorney fees incurred in attempting to recover Sanchez's policy benefits wrongly withheld by the insurer (*Brandt*[4] fees).

The issue in *Essex* was whether: "When an insured assigns a claim for bad faith against the insurer, and the assignee brings a tort action against the insurer that includes a claim for wrongfully withheld policy benefits, may the assignee recover *Brandt* fees?" (*Essex, supra*, 38 Cal.4th at p. 1255.) The court in *Essex* held the assignee was entitled to such fees even though they were not paid by the insured/assignor. (*Ibid.*)

The *Essex* court explained that in *Brandt, supra*, 37 Cal.3d at page 817, the *Brandt* court had held that "when an insurer denies coverage in bad faith, the insured can recover attorney fees in an action to recover the policy benefits." (*Essex, supra*, 38 Cal.4th at p. 1257.) In *Essex*, the insured, Sanchez, assigned to Five Star his insurance bad faith claims, which included his right to recover attorney fees incurred in pursuing the claims.

The *Essex* court rejected Essex's argument that only fees incurred by the insured (Sanchez) were recoverable, and therefore Five Star could not recover attorney fees it incurred as assignee in asserting Sanchez's insurance bad faith claim, assigned to Five Star. (*Essex, supra*, 38 Cal.4th at p. 1263.) The *Essex* court reasoned that in an insurance bad faith action, a claim for breach of the duty to defend is assignable. The claim Sanchez assigned to Five Star arose from Essex's breach of its duty to defend Sanchez. (*Ibid.*)

As assignee, Five Star sought to recover the policy benefits wrongfully withheld, including the right to a defense. The *Essex* court noted that " '[w]hen an insurer's tortious conduct reasonably compels the insured to retain an attorney to obtain the benefits due under a policy,' the fees incurred for those attorney services 'are an economic loss—damages—proximately caused by the tort.' " (*Essex, supra*, 38 Cal.4th at p. 1263, quoting *Brandt, supra*, 37 Cal.3d at p. 817.)

The *Essex* court further noted that: " 'As a general rule, the assignee of a chose in action stands in the shoes of his assignor, taking his rights and remedies . . . .' [Citation.] Had Sanchez brought the bad faith action against Essex, his right to recover *Brandt* fees would be unquestioned. As the assignee of Sanchez's claim against Essex, Five Star stands in his shoes, and

---

[4] *Brandt v. Superior Court* (1985) 37 Cal.3d 813 [210 Cal.Rptr. 211, 693 P.2d 796] (*Brandt*).

so may assert his right to recover any *Brandt* fees incurred in prosecuting the assigned claim." (*Essex, supra,* 38 Cal.4th at p. 1264.)

Likewise, in the instant case, where Parsons refused to provide KM with a defense, resulting in Searles paying for KM's defense, Searles is entitled to recover from Parsons the cost of KM's defense in the underlying wrongful death action. The fact that Searles paid the fees and costs, rather than KM, does not foreclose Searles, as KM's assignee, from recovering the defense expenses Searles paid on KM's behalf. Literal payment of KM's attorney fees and costs by KM was not required, since Searles was assigned the right to indemnification for economic damages which included the cost of KM's defense.

During oral argument, counsel for Parsons argued Searles had no valid express indemnity claim arising from Searles providing KM with a defense, since KM's rights to a defense and indemnity had previously been extinguished upon KM assigning its rights to Searles. This contention is only briefly alluded to at the end of Parsons's respondent's brief, without citation to any legal authority: "If *Searles* actually became the 'holder of the indemnity' upon the assignment, then *Kerr-McGee* would not have had any right to [a] defense or indemnity when the Moore Action was filed. In that event, Searles would have no basis to assert that Parsons was required to defend or indemnify Kerr-McGee, and could not state a cause of action to recover Kerr-McGee's defense costs."

Not only does Parsons fail to cite any supporting authority for this proposition but, in addition, we reject this argument because Searles was entitled to recover KM's defense costs as economic damages under the indemnity agreement, as KM's assignee. Under the indemnity agreement, KM was entitled to a defense or, alternatively, to the cost of its defense. These rights were assigned to Searles and the fact that Searles paid KM's defense, rather than KM, does not preclude Searles, as assignee, from recovering KM's defense expenses under the indemnification agreement.

We thus conclude Searles adequately alleged a cause of action for express indemnity as assignee of KM's indemnity rights.

### 3. Disposition

The judgment of dismissal is reversed. The trial court is directed to vacate its order sustaining the demurrer to the first cause of action for express indemnity, and to enter a new order overruling the demurrer to the first cause of action.

Searles is awarded its costs on appeal.

Ramirez, P. J., and Richli, J., concurred.

Respondents' petition for review by the Supreme Court was denied April 13, 2011, S191027.