Filed 6/29/26  Sapphaithoon v. Wiwatniwong CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| SUMALAI SAPPHAITHOON, | B347764 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. 19STCV44908) |
| v. | |
| AMPAUNCHIT WIWATNIWONG, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Thomas D. Long, Judge.  Affirmed.

Affordable Advocates, Anna Moses for Defendant and Appellant.

Bet Tzedek Legal Services, Edward J. Elsner; Theodora Oringher, Jessica N. Walker for Plaintiff and Respondent.

# INTRODUCTION

Sumalai Sapphaithoon filed an action against her landlord, Ampaunchit Wiwatniwong, a.k.a. Posey Chan. She alleged that defendant harassed and threatened her in an attempt to force her to vacate her residence, overcharged her for rent, removed her possessions and appliances, and allowed third parties to enter the residence without notice. Over the course of five years of litigation, the trial court found that defendant engaged in a pattern of conduct to delay the trial, including discharging several attorneys, waiting until the eve of trial to request a lengthy continuance, attempting to remove the case to federal court, and filing a meritless motion to disqualify the trial judge. In addition, defendant refused to communicate with opposing counsel or participate in discovery and failed to comply with the court's orders regarding submission of trial documents. She also failed to attend a mandatory settlement conference requested by her counsel. The court granted plaintiff's motion to compel discovery and issued monetary sanctions against defendant and her counsel for various violations. After defendant failed to appear at two final status conferences and failed to respond to the court's order to show cause, the court struck defendant's answer as a terminating sanction and entered her default. Plaintiff subsequently obtained a default judgment against defendant.

Defendant appeals from the default judgment. First, she argues that the court's orders were void because she was never properly served with the operative pleading and the court lost jurisdiction over the matter after she sought to disqualify the judge. Second, defendant contends that terminating sanctions were unwarranted and that the court entered default judgment against her without proper proof of plaintiff's claims or damages. She also raises due process claims of bias and unfair treatment. We conclude that the trial court did not err in issuing terminating sanctions and entering default judgment against defendant. We therefore affirm.

# BACKGROUND

## I. *Complaint*

Plaintiff filed a complaint on December 16, 2019 against defendant, Bunthiwa Sae Tang, and Joy King.[1]  The complaint alleged causes of action for wrongful eviction, tenant harassment, elder financial abuse, violation of the Los Angeles Rent Stabilization Ordinance, quiet enjoyment, declaratory relief, conversion, and negligent hiring and supervision.  Plaintiff personally served defendant with the summons and complaint, and defendant filed an answer.

Plaintiff filed a first amended complaint (FAC) in January 2020, dropping the negligent hiring claim, and then a second amended complaint (SAC) against only defendant and Tang.  Plaintiff alleged all causes of action against defendant.

As alleged in the operative SAC, plaintiff was a 76-year old Thai woman who does not speak or read English.  Tang was the record owner of several rental units located on a single property in Los Angeles (the property).  Defendant was the rental manager; she also represented that she held a power of attorney for Tang regarding the property and at times, stated that she was the property owner.

The SAC alleged that in approximately 2001, plaintiff entered into an oral, month-to-month rental agreement with defendant to occupy the middle of three rooms in one of the units at the property. The unit had been subdivided so that each of the three rooms had a bathroom and an exterior door.  In approximately 2010, the Los Angeles Housing Department reduced plaintiff's rent based on outstanding code violations at the property.  However, defendant continued to demand plaintiff pay the full monthly rent.

In 2018, defendant began harassing plaintiff and attempting to intimidate her into vacating her room.  Defendant hired King as a property

---

[1]     Tang is an elderly woman who, according to defendant, has lived in Thailand for the last decade.  Defendant referred to Tang as her "sister," although it appears they were not actually siblings.  Plaintiff ultimately dismissed both Tang and King from the complaint.

manager, who also engaged in menacing conduct toward plaintiff, including entering plaintiff's unit without notice or permission and shouting at plaintiff to give up her key and move out. Plaintiff obtained a restraining order against King, but while she was doing so, King and defendant removed plaintiff's personal property from her room, including her clothing, bedding, appliances, and medication. The next day, while plaintiff was at the hospital to replace vital medication, defendant gutted her room, including removing the exterior door, toilet, cabinets, and fixtures. Almost two weeks later, workers re-installed the door and some of the other items, but locked plaintiff out. Plaintiff was able to return to the unit the next day with the assistance of the police department.

In December 2018, defendant rented the front room to another female occupant. Without plaintiff's consent, defendant gave the front room tenant a key to plaintiff's door, and that renter would enter plaintiff's room to use plaintiff's bathroom while plaintiff was sleeping. In January 2020, defendant and several other individuals entered plaintiff's room without notice on two occasions, citing a three-day eviction notice and claiming that plaintiff had refused reasonable access to the room to make necessary repairs. Defendant wanted to demolish plaintiff's bathroom and remove her exterior door. Plaintiff disputed defendant's claim that these changes were necessary to bring the unit into compliance with the housing department and alleged that their true purpose was the actual and constructive eviction of plaintiff from her residence.

## II.   *Litigation Proceedings*

In July 2020, defendant's counsel substituted out of the case and she began representing herself. At a status conference in March 2021, the court set the initial trial date for July 2022.

In May 2022, the court heard a motion to compel filed by plaintiff for defendant's failure to provide any responses to discovery. Defendant did not appear for the hearing. The court granted the motion, ordered defendant to serve responses without objections, and sanctioned her $1,120.

In June 2022, plaintiff informed the court that defendant had refused all attempts by plaintiff's counsel to discuss motions in limine in preparation for trial. In a handwritten filing dated June 9, 2022, defendant stated she

4

had been unable to find a good lawyer despite contacting between 10 and 12 in the last year. She requested a continuance of "at least a year," to allow her to prepare for trial. Plaintiff filed her own application for a three-month trial continuance. Because defendant continued to refuse to participate in any discovery, plaintiff requested the continuance to allow plaintiff to file a motion for sanctions before trial. The court granted plaintiff's application, continuing trial to October 2022.

Plaintiff then filed a motion for monetary and terminating sanctions. Plaintiff argued that defendant had not provided answers to written discovery and had not paid the sanctions ordered by the court pursuant to the prior motion to compel. Defendant was combative and uncooperative during her deposition and refused to provide answers to most of the questions, including whether she owned any rental properties. Defendant's behavior resulted in the suspension of her deposition after two and a half hours. Plaintiff's counsel noted that defendant had previously filed an unlawful detainer action against plaintiff (that action was ultimately dismissed), and during that litigation, defendant provided written discovery and documents, and cooperated during her deposition. During her 2019 deposition in that action, defendant testified that she owned "more than ten" residential rental properties.

The case was reassigned to Judge Thomas Long in early July, 2022. On July 27, 2022, the court granted plaintiff's motion for leave to file the SAC. Defendant did not oppose the motion and did not appear at the hearing. The court noted that at a prior order to show cause (OSC) hearing re: entry of default against Tang, the court "determined that the statement of damages was insufficient . . . , so the FAC should be amended to include the specific amounts of damages sought." The court found that the proposed SAC "does not enlarge the issues in this case." As a result, the court ordered that defendant "may choose to file a new Answer to the SAC, but if she does not, the Court will deem the Answer to the FAC applicable to the SAC." Defendant was present at the prior OSC hearing, with a Thai interpreter, where the court discussed the statement of damages.

Plaintiff filed the SAC on July 27, 2022. In the SAC, plaintiff alleged that she had suffered $400,000 in damages for emotional distress and

5

$42,772 for lost personal property. She also sought $11,950 in statutory damages, $20,000 in civil penalties, $89,340 as treble damages for the amount of rent unlawfully demanded by defendant, and punitive damages.[2] She served defendant with the SAC by mail on August 1, 2022.

The court heard plaintiff's motion for terminating sanctions on August 4, 2022. New counsel appeared on behalf of defendant. The court denied the motion, reasoning that at the time the motion was filed, defendant's compliance with the court's prior discovery order was only two weeks overdue, and plaintiff had not yet sought any other relief regarding defendant's deposition conduct. As such, "the Court cannot conclude that less severe sanctions would be ineffective and that terminating sanctions are warranted." Through her counsel, defendant subsequently served discovery responses and appeared for another session of her deposition.

Trial was continued multiple times over the next two years. In September 2022, the court granted the parties' stipulation to continue trial to December 2022 to allow for settlement discussions. In October 2022, the court on its own motion continued trial to July 2023. In June 2023, the court granted the parties' stipulated request to continue trial to April 29, 2024, as the parties had tentatively agreed to a partial settlement.

In August 2023, defendant's counsel sought to be relieved as counsel, which the court granted. Plaintiff did not oppose the request, but expressed concern that defendant would seek to further delay trial. Once again proceeding in pro per, defendant did not communicate further with plaintiff on any matters related to the case or the pending settlement, which was never finalized.

Defendant filed a request to continue the trial in February 2024. She stated that she had found a new attorney but he needed additional time to prepare for trial. She requested a continuance of 12 to 18 months. The court

_____

[2]    Plaintiff had alleged the same categories of damages in her initial complaint and FAC, but included the dollar amounts in the SAC. In July 2022, she also served on defendant a notice of reservation of right to seek punitive damages of $800,000.

did not respond to that request, but subsequently continued trial to July 2024 due to the court's schedule.

In April, defendant retained new counsel, Motaz Gerges. Gerges filed an ex parte application to continue trial, stating that he did not have time to adequately prepare for trial. Plaintiff opposed, arguing that defendant had engaged in a "strategic pattern of delay" and had not shown good cause to continue the trial. The court denied the application on April 12, 2024. During that hearing, Gerges requested a mandatory settlement conference (MSC). However, neither defendant nor her counsel appeared on the date of the MSC.

In preparation for the July 2024 trial, plaintiff attempted to meet and confer with defendant regarding exchanging proposed trial documents. Defendant did not respond and did not provide any proposed trial documents of her own. Plaintiff then filed her proposed trial documents without any input from defendant.

The court held the final status conference (FSC) on June 17, 2024, attended by counsel for both parties. The court found that defendant had violated the court's trial preparation order and ordered the parties to submit new, joint trial documents. The court made additional detailed rulings regarding the documents and ordered the parties to work collaboratively. The court continued the FSC to July 1, 2024 and set an OSC re: sanctions for defendant's counsel's failure to attend the MSC. At plaintiff's request, the court also dismissed Tang from the SAC. The court ordered the parties to submit joint trial documents.

In a declaration of compliance, plaintiff's counsel notified the court that she had attempted multiple times to discuss the joint trial documents, but defendant's counsel had not provided any input and refused to meet and confer. Plaintiff submitted revised trial documents without defendant's cooperation in advance of the continued FSC and trial.

On June 25, 2024, defendant filed a substitution of counsel, stating that she would be representing herself. Defendant then filed a notice of removal of the case to federal district court on June 27, 2024.

At the continued FSC on July 1, 2024, defendant's former counsel, Mr. Gerges, appeared on his own behalf regarding the OSC.[3] Defendant did not appear. The court sanctioned defendant's counsel $500 for failure to comply with the court's orders regarding the MSC. The court also noted defendant's pending notice of removal and found it had no choice but to continue trial to August 12, 2024. The federal district court remanded the case on July 17 for lack of subject matter jurisdiction.

On August 9, one court day before the scheduled start of trial, defendant filed an ex parte application to continue trial. She sought a six-month continuance so that she could retain new counsel, depose plaintiff's expert witnesses, and file a motion for summary judgment. In a supporting declaration, defendant stated that plaintiff's counsel was "dishonest and crooked," and accused the court of engaging in a "calculated hoax" to bully her former attorneys so that they would withdraw from the case.

Plaintiff opposed, arguing that defendant had not demonstrated good cause to continue the trial a seventh time. Plaintiff also noted that defendant had never deposed the experts on plaintiff's 2022 witness list and never served a demand for exchange of expert witness information.

III. *Disqualification Motion*

On August 9, 2024, the same day she filed the ex parte application to continue trial, defendant filed a motion to recuse Judge Long pursuant to Code of Civil Procedure sections 170.1 and 170.3.[4] She argued that Judge Long failed to disclose a relationship between his former law firm and the law firm representing plaintiff. Specifically, she alleged that Judge Long's former firm served as co-counsel on an unrelated case with plaintiff's counsel's firm and that a particular attorney moved from one firm to the other. Defendant also claimed that Judge Long exhibited "bias and prejudice" against her in his rulings on the case. She contended that by sanctioning her former attorney, Gerges, the court intimidated him and forced him to substitute out of the case. She also filed an objection "to any and all hearings and trial to be heard" by Judge Long.

---

[3] We granted plaintiff's motion to augment the record with, among other things, reporter's transcripts of the FSC proceedings.

[4] Undesignated statutory references are to the Code of Civil Procedure.

The court issued an order striking defendant's motion for recusal. The court noted that pursuant to section 170.3, subdivision (c)(1), the party seeking disqualification has the burden of proof and must submit facts to support her position, rather than conclusions. The court disclosed that during his career at the law firm he did not work on any matters involving plaintiff's counsel's firm, he was not aware of the case defendant cited, and did not know the attorney who switched firms. He had no current financial interest in the law firm. The court concluded that his prior employment "is irrelevant to this case and does not form a valid basis for disqualification." The court also found that defendant's disagreement with the court's rulings did not constitute a valid basis for disqualification. Thus, because "there is no valid basis for disqualification in this case and the Statement on its face discloses no legal basis for disqualification, the Statement is stricken" pursuant to section 170.4, subdivision (b).

Defendant filed a petition for writ of mandate with this court on August 22, 2024 regarding the order striking the disqualification motion. This court summarily denied the writ petition the following day.[5]

## IV.  *Entry of Default and Default Judgment*

Defendant did not appear for the continued FSC and start of trial on August 12, 2024. Attorney Anna Moses specially appeared for defendant only as to the ex parte request to continue trial. Moses stated that she had met with defendant over the weekend and defendant "begged me to represent her in this ex parte hearing," but she would not be representing defendant at trial. Moses also stated that she did not know why defendant removed her last attorney, Gerges.

Plaintiff's counsel pointed out to the court that Moses worked for the same law firm, Affordable Advocates, as Gerges. Moses had been involved with the case "since April," including frequently communicating with plaintiff's counsel. After Moses confirmed that this was accurate, the court stated, "So, really, you and your firm are part of the game that [defendant] has been playing to delay this case . . . indefinitely such that it will never go

---

[5]  We grant plaintiff's request for judicial notice of several court documents, including the writ petition and denial order.

9

to trial." The court found that neither defendant nor Moses were credible. Upon further questioning from the court, Moses stated that she did not know where defendant was or if she intended to attend the hearing.

The court denied defendant's ex parte application to continue trial for six months, but continued the FSC and trial to August 26, 2024. The court also issued an OSC re: striking defendant's answer and entering default for failure to appear at the August 12, 2024 FSC and failure to comply with the court's trial preparation order. The court set the OSC for hearing on August 26, the first day of trial. The court cautioned Moses to inform defendant that she was "ordered to show up in person regardless of whether or not she has an attorney representing her." On August 15, plaintiff served a notice of ruling of the August 12, 2024 FSC order on defendant by email and mail.

On August 26, 2024, the day set for the OSC and trial, defendant in pro per filed a notice of unavailability. She stated that she would be "out on medical leave of absence pursuant to the recommendation of Glendale Memorial Hospital" and would be "unavailable for all purposes, for any and all court appearances," from August 24 to September 31, 2024. Defendant stated that "the court cannot proceed to trial due to defendant's inability to attend at trial for her serious medical condition as the result of the appellate and trial courts, plaintiff and her attorneys causing defendant severe medical injuries." In an accompanying declaration, defendant stated that she was admitted to the emergency room on August 24 "due to my serious medical conditions that I have been suffering as the result of abuses and discriminations caused by Judge Thomas D. Long, the appellate justices and plaintiff's several attorneys attempting to extort money from me." She attached as an exhibit a note on hospital letterhead, dated August 24, requesting a medical excuse for an unnamed individual "from work/school as he/she was cared for in our emergency room."

Defendant did not file a written response to the OSC and did not appear for the continued FSC and start of trial on August 26, 2024. The court indicated at the hearing that it had just received the notice of unavailability filed by defendant; plaintiff had not received it. Plaintiff's counsel stated that she had reached out to defendant several times since the last hearing but had received no response. The court noted that the

10

purported hospital note was signed by "medical staff," but it was unclear if that person was a doctor, and the note did not identify defendant by name as having been in the emergency room. The note also did not indicate what the medical condition was or why defendant was unavailable. The court found defendant's notice of unavailability was irrelevant to the issue of defendant's prior failures to appear.

The court found that defendant failed to appear for the August 12, 2024 FSC, failed to appear for the continued FSC and trial, and failed to cooperate with plaintiff in preparing joint trial materials. The court accordingly struck defendant's answers to the complaint and FAC, and her general denial to the SAC. The court entered defendant's default and set a hearing regarding entry of default judgment for December 17, 2024. The court subsequently continued the OSC at plaintiff's request to May 13, 2025.

Plaintiff filed a request for default judgment on May 9, 2025, along with a packet of materials to support her claims. The packet included deeds showing that on August 30, 2024, a few days after the entry of default, defendant transferred four real properties as a "gift" to several individuals who lived at defendant's address. The same day, defendant recorded a deed of trust against a fifth property, purporting to secure a loan of $1,385,000 to defendant. The total appraised value of these properties was $4,575,000.

Plaintiff also submitted declarations regarding the events alleged in the complaint, a declaration and certified records from the housing department, certified grant deeds for multiple properties showing defendant's ownership of five properties in Los Angeles at the time of default. The experts submitted detailed reports regarding each property at issue and appraised the total market value of defendant's portfolio at $6,181,000. Plaintiff also cited to defendant's deposition testimony in the unlawful detainer action, in which defendant stated that she bought the property at issue here under Tang's name because "I have so many properties."

Plaintiff sought a total of $1,405,671.39 in damages, including $800,000 in punitive damages, statutory damages, civil penalties, treble damages, economic damages, and $400,000 in noneconomic damages.

On May 20, 2025, defendant filed a motion to set aside default. She argued that the court lacked jurisdiction to handle the case after she filed her

disqualification statement and thus that all subsequent orders were void. She also contended that the judge ignored her doctor's note stating her unavailability for trial "due to his vendetta" against her and his personal interest in the case. Plaintiff opposed, arguing that the court appropriately struck the statement of disqualification, defendant received full appellate review of the issue through writ proceedings, and the issue could not be relitigated.

The court heard defendant's motion to set aside default on June 3, 2025. Defendant did not appear. The court denied the motion, finding that defendant's argument regarding disqualification was an "improper and untimely request for reconsideration of the Court's orders striking her statements of disqualification."

The court heard plaintiff's request for entry of default judgment on the same day. The court found that the statutory damages, civil penalties, and treble damages were legally supported. The court also found that the amount of economic damages sought was supported by the evidence. Regarding emotional distress, the court found that "[c]onsidering the totality of the allegations and Plaintiff's declaration, the Court finds that $400,000.00 is reasonable." Next, the court considered punitive damages. The court considered the evidence of the market value of defendant's real estate holdings as presented by the documentary evidence and expert witnesses. The court concluded, "[c]onsidering the reprehensibility of the defendant's conduct, the reasonableness of the relationship between the award and the Plaintiff's harm, and the Defendant's financial condition, the Court finds that $800,000 in punitive damages is a reasonable amount to punish Defendant and discourage future wrongful conduct." The court also found that the request for $77,400 in attorney fees and $2,015 in costs was reasonable and recoverable. The court therefore entered default judgment against defendant in the amount of $1,405,671.39.

Defendant filed a motion to set aside default and default judgment on June 12, 2025. She also filed a renewed motion to recuse Judge Long. The court struck the recusal motion, finding it raised no new grounds for disqualification.

Defendant, represented by attorney Moses, timely appealed from the entry of default judgment.  Because her motion to set aside default and default judgment remained pending, the court took the motion off calendar pending the outcome of the appeal.

## DISCUSSION

Defendant asserts two threshold errors that she contends violated her right to due process and invalidate the entry of default judgment.  First, she argues that the SAC was never properly served on her and thus never became the operative complaint.  Second, she challenges the trial court's ability to strike her motion to disqualify him, arguing that the matter should have been decided by a different judge.  Substantively, defendant contends the court abused its discretion in entering default as a terminating sanction.  She also argues that plaintiff did not provide meaningful evidence in the default prove-up to support her claims for liability and damages.  Finally, she alleges that the trial court failed to act impartially and exhibited bias.  We find no merit to any of these claims.

## I.    *Validity of SAC*

Section 580 limits a plaintiff's recovery from a defaulting defendant to the amounts demanded in the complaint.  This limitation also applies to a default entered as a terminating sanction.  (*Greenup v. Rodman* (1986) 42 Cal.3d 822, 829.)  Defendant asserts that the SAC was not properly served on her, and therefore never became operative against her.  As a result, she contends that the default judgment is void because it awarded damages beyond what was alleged in the FAC.  "Whether a judgment is void due to improper service is a question of law that we review de novo." (*Sakaguchi v. Sakaguchi* (2009) 173 Cal.App.4th 852, 858.)

The parties dispute whether this issue is forfeited due to defendant's failure to raise it below.  Assuming we reach the issue, we find that defendant has not established error.

Neither the authorities nor evidence defendant cites support her claim that plaintiff failed to properly serve the SAC. As the court explained in *Engebretson & Co. v. Harrison* (1981) 125 Cal.App.3d 436 (*Engebretson*), "a defendant need only be served with summons once and [ ] service of an amended complaint by mail under Code of Civil Procedure section 1012 is

sufficient where the defendant has made an appearance in the action." (*Id.* at p. 441, footnote omitted.) Here, defendant made a general appearance and filed answers to the complaint and FAC. As such, plaintiff was required only to serve the SAC on defendant by mail. (§§ 1012, 1014.) It is undisputed that plaintiff did so and that the SAC alleged damages in an amount consistent with the judgment.

Defendant relies on *Engebretson* for the proposition that "where an amendment increases the amount of damages sought, mere mail service is inadequate." But the court explicitly limited that discussion to circumstances where the defendant has *not* appeared in the action. (See *Engebretson, supra*, 125 Cal.App.3d at p. 444; see also *Plotitsa v. Sup. Ct.* (1983) 140 Cal.App.3d 755, 759 [approving of holding in *Engebretson* that "amendments to civil complaints, which increased the amount of damages sought, must be personally served upon a 'nonappearing' defendant before default may be entered against such defendant for the increased amount"].)

Defendant's argument is also unsupported by the record. She cites a clerk's notice of rejection as evidence that plaintiff did not properly serve her. But this notice is related to plaintiff's attempts to serve *another defendant*, Tang, not defendant. Plaintiff attempted to serve Tang, who had not appeared in the action and was purportedly living in Thailand, with service of the summons and complaint through defendant as Tang's agent for service. This notice reflects the court clerk's rejection of that attempt. It has no relevance to the adequacy of the service of the SAC on defendant.

Further, defendant's assertion that she was unaware of the "dramatic increase" in damages in the SAC at the time of her default is disingenuous. At a hearing in mid-2022 on plaintiff's request for entry of default against co-defendant Tang, at which defendant was present, the court informed plaintiff that her previously filed statement of damages, which sought $400,000 in noneconomic damages and $800,000 in punitive damages, was inadequate. Instead, the court told plaintiff to amend her complaint to include the specific amounts of damages sought. Defendant did not oppose plaintiff's motion for leave to file the SAC for this express purpose and the SAC alleged damages in the previously noted amounts. We also note that in her June 2024 notice of removal, defendant alleged that in the SAC, plaintiff was "seeking more

14

than $1,000,000" in damages, indicating that defendant was aware of the updated damages alleged in the SAC.

Defendant also states that she never filed an answer to the SAC, and argues that because plaintiff did not move for default on that basis, it demonstrates plaintiff's knowledge that the SAC was not properly served. This argument is meritless and misleading. When granting plaintiff's request to file the SAC, the trial court expressly ruled that defendant did not need to file an answer and if she did not, her answer to the FAC would stand. Moreover, defendant filed a general denial to the SAC. She fails to mention these facts and instead cites only to the discussion between and court and plaintiff's counsel during the default judgment hearing stating that defendant had filed a document that "might be showing [on the docket] as a general denial." Thus, defendant has not met her burden to demonstrate error as to service of the SAC.

## II. *Disqualification*

Defendant contends the trial court failed to properly handle her motion to disqualify Judge Long pursuant to section 170.3; she therefore argues that the court's rulings following that failure are void for lack of jurisdiction. As noted above, defendant filed a motion to recuse Judge Long, which the court deemed a statement of disqualification under section 170.3, subdivision (c). Finding that defendant's motion failed to disclose any legal grounds for disqualification, the court struck the pleading. (§ 170.4, subd. (b) ["if a statement of disqualification . . . on its face it discloses no legal grounds for disqualification, the trial judge against whom it was filed may order it stricken"].) Defendant now contends Judge Long should have disqualified himself or allowed the issue to be determined by another judge, as provided in section 170, subdivision (c)(5).[6]

Plaintiff argues the order striking the statement of disqualification is not reviewable on appeal. We agree.

"The determination of the question of the disqualification of a judge is not an appealable order and may be reviewed only by a writ of mandate from

---

[6] Defendant does not directly challenge Judge Long's finding under section 170.4 that the statement of disqualification was invalid on its face. She also failed to mention that she filed a writ petition on this issue.

15

the appropriate court of appeal sought only by the parties to the proceeding." (§ 170.3, subd. (d).) "'[A] timely writ petition is the exclusive avenue for appellate court review whether the judge's disqualification is sought for cause (per CCP § 170.1) or by peremptory challenge (per CCP § 170.6); the ruling is neither directly appealable nor reviewable on appeal from the subsequent final judgment.'" (*D.C. v. Harvard-Westlake School* (2009) 176 Cal.App.4th 836, 849–850; see also *People v. Freeman* (2010) 47 Cal.4th 993, 1000 ["'Under our statutory scheme, a petition for writ of mandate is the exclusive method for obtaining review of a denial of a judicial qualification motion.'"]; *Guedalia v. Superior Court* (1989) 211 Cal.App.3d 1156, 1159–1163 ["we conclude that section 170.3, subdivision (d) is the exclusive appellate remedy for any motions to disqualify a judge"].)

Defendant filed a writ petition in this court challenging Judge Long's order striking her disqualification motion, which we summarily denied. Defendant has thus "received the appellate review of her] statutory claim to which [s]he was entitled." (*People v. Panah* (2005) 35 Cal.4th 395, 445.)

In her reply, defendant argues that she is challenging the process employed by the trial court in striking her disqualification motion, rather than a substantive denial on the merits. But none of the authority she cites allows for further appellate review of the trial court's order on her disqualification motion. Indeed, several of the cases require writ review under just such circumstances. (See *PBA, LLC v. KPOD, Ltd.* (2003) 112 Cal.App.4th 965, 971 [defendants who failed to seek writ review "are precluded from seeking review of their [section 170.1] declarations of bias and prejudice (whether stricken or determined meritless), . . . by appeal following the final judgment"]; see also *Dumas v. Los Angeles County Bd. of Supervisors* (2020) 45 Cal.App.5th 348, 354 [order striking disqualification motion is not reviewable on appeal].) Thus, defendant's challenge to the trial court's order striking her disqualification motion is not cognizable on appeal.

## III.   *Terminating Sanctions*

Defendant next challenges the court's entry of terminating sanctions against her.

## A. Legal Principles

Trial courts have inherent authority to control the proceedings before them, including "the authority to impose a terminating sanction where a party willfully violates the court's orders." (*Osborne v. Todd Farm Service* (2016) 247 Cal.App.4th 43, 53 (*Osborne*).) Even absent violation of a court order, courts possess inherent power to issue a terminating sanction for "pervasive misconduct[.]" (*Id.* at p. 51.)

A court has broad discretion in selecting the appropriate penalty, and we must uphold the court's determination absent an abuse of that discretion. (*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, 604.) In reviewing the order, "our task is not to supplant our own judgment for that of the trial court, but to ascertain whether the trial court abused its discretion by imposing a terminating sanction." (*Electronic Funds Solutions, LLC v. Murphy* (2005) 134 Cal.App.4th 1161, 1183.) When the trial court's exercise of its discretion relies on factual determinations, we examine the record for substantial evidence to support them. (*Los Defensores, Inc. v. Gomez* (2014) 223 Cal.App.4th 377, 390.) We determine "whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination [of the trier of fact]." (*Id.* at p. 391, quoting *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873–874.)

"A decision to impose the ultimate sanction—a judgment in the opposing party's favor—should not be made lightly. 'But where a violation is willful, preceded by a history of abuse, and the evidence shows that less severe sanctions would not produce compliance with the [court's] rules, the trial court is justified in imposing the ultimate sanction.'" (*Parker v. Wolters Kluwer United States, Inc.* (2007) 149 Cal.App.4th 285, 297; see also *Lyons v. Wickhorst* (1986) 42 Cal.3d 911, 917 [court must consider a party's pattern of misconduct and availability of less severe alternatives].)

## B. Forfeiture

Defendant contends that the trial court's issuance of terminating sanctions was not supported by substantial evidence. Defendant has forfeited this contention by failing to provide a complete record of the relevant facts.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence" supporting the trial court's finding. (*People v. Tully* (2012) 54 Cal.4th 952, 1006.) It is a defendant's responsibility to include in the appellate record the portions of the lower court record relevant to the defendant's issues on appeal. (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1002.) "[A] record is inadequate . . . if the [defendant] predicates error only on part of the record . . . but ignores or does not present to the appellate court the portions of the proceedings [in the trial court] which may provide grounds upon which the decision of the trial court could be affirmed." (*Osgood v. Landon* (2005) 127 Cal.App.4th 425, 435; see also *E.I. v. El Segundo Unified School Dist.* (2025) 111 Cal.App.5th 1267, 1286 (*E.I.*) [appellant's failure to present both favorable and unfavorable evidence "waives any claim that the trial court's . . . finding is not supported by substantial evidence"].)

Defendant included only the minute order from the August 26, 2024 default judgment hearing, omitting the reporter's transcript from the record and any reference to it in her briefs. We therefore reject her reliance on the minute order from that hearing alone to establish whether the court properly issued terminating sanctions. Defendant attempts to minimize her conduct throughout the litigation by focusing only on the last few hearings and arguing that the court acted rashly in imposing terminating sanctions. She fails to discuss any of the relevant history leading up to the issuance of terminating sanctions, including plaintiff's prior motion for sanctions and the trial court's finding that defendant engaged in a pattern of delay tactics to postpone trial. As such, we reject as unsupported defendant's suggestion that the court suddenly "jump[ed]" to entering default out of frustration after defendant failed to attend two status conferences and failed to comply with a trial-preparation order. By failing to present a complete record, defendant has forfeited her argument that the court's order lacks substantial evidence.

C. **Analysis**

Even if we considered the merits of defendant's argument, we would find no error. Substantial evidence amply supports the court's finding that defendant intentionally engaged in delay tactics to postpone the trial

indefinitely and that defendant's justifications lacked credibility. On multiple occasions, defendant used the discharge or hiring of counsel to claim that she needed more time to prepare for trial. Twice defendant represented herself for months to years, during which time she refused to cooperate in discovery or trial preparation, only to request lengthy continuances shortly before trial so that she could hire new counsel and prepare for trial. When those requests were denied, she employed other delay tactics to force continuances shortly before trial, including requesting a settlement conference (which she did not attend), filing an unsuccessful notice of removal to federal court, and seeking to disqualify the trial judge without providing any valid basis for the disqualification. Having largely refused to participate in discovery and failed to file any dispositive motions for the first four and a half years of the case, she sought a six-month continuance in August 2024, again on the eve of trial, claiming that she needed to depose plaintiff's experts and bring a motion for summary judgment. This conduct resulted in several monetary sanctions orders against defendant and her counsel, including one for the failure to attend the MSC and one imposing monetary sanctions instead of terminating sanctions due to defendant's failure to comply with the court's prior discovery orders.

Notwithstanding the prior imposition of sanctions, defendant failed to cooperate with plaintiff's counsel to comply with the court's orders regarding submission of joint trial documents, despite express instructions from the court and repeated opportunities to do so. She then failed to appear for the FSC and scheduled trial on July 1, August 12, and August 26, 2024, in violation of local rules. (See Super. Ct. L.A. County Rules, rules 7.7, subd. (c), 7.9, 7.13; see also § 575.2, subd. (a) [court may impose sanctions for violation of local rules].) For the first two FSC/trial dates, she provided no explanation for her absence and for the last date, she submitted a purported medical note on the morning of the conference that provided no information regarding why she could not be present in court. The validity of this purported medical emergency is undercut by defendant's claim that her medical condition was caused by "abuses and discriminations" caused by the trial court, this court, and plaintiff's counsel. She also submitted nothing in response to the court's OSC regarding entry of default. Under these circumstances, we find no

19

abuse of discretion in the court's determination that defendant engaged in a pattern of willful misconduct and violation of court rules, and that lesser sanctions would not deter further misconduct.

To the extent that defendant contends the court did not make express findings in support of its sanctions order, we will infer all necessary findings to support a judgment, so long as substantial evidence exists to support them. (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928.) Moreover, that defendant proceeded at times in propria persona does not relieve her of her obligations. (See *Wantuch v. Davis* (1995) 32 Cal.App.4th 786, 795 ["In propria persona litigants are entitled to the same, but no greater, rights than represented litigants."].) In sum, she has not demonstrated error in the trial court's imposition of terminating sanctions against her.

## IV.  *Damages*

Defendant also asserts error in the trial court's approval of $400,000 in noneconomic damages and $800,000 in punitive damages. She contends plaintiff did not meet her burden to provide sufficient evidence to support a judgment of these amounts.

### A.  Legal Principles

Because she was in default, defendant was not entitled to participate in the prove-up hearing. But plaintiff still bore the burden of proving her entitlement to damages. (See *Siry Investment, L.P. v. Farkhondehpour* (2022) 13 Cal.5th 333, 343 (*Siry*); see also *Barragan v. Banco BCH* (1986) 188 Cal.App.3d 283, 302; § 585, subd. (b).) Moreover, the trial court "acts as a 'gatekeeper,' not a rubber stamp," and remains obligated to ensure that a plaintiff has established entitlement to damages under "(1) the relevant statute, contract, or legal doctrine, and (2) the well-[pleaded] allegations in its operative complaint." (*Siry, supra*, 13 Cal.5th at p. 343.)

"An award of punitive damages hinges on three factors: the reprehensibility of the defendant's conduct; the reasonableness of the relationship between the award and the plaintiff's harm; and, in view of the defendant's financial condition, the amount necessary to punish him or her and discourage future wrongful conduct." (*Neal v. Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 928 & fn. 13; see also *Adams v. Murakami* (1991) 54 Cal.3d 105, 110 (*Adams*).) The plaintiff bears the burden to present

"meaningful evidence of the defendant's financial condition." (*Adams, supra,* 54 Cal.3d at p. 109.)

The Supreme Court has not "prescribe[d] any rigid standard for measuring a defendant's ability to pay." (*Adams, supra*, 54 Cal.3d at p. 116, fn. 7.) "Accordingly, there is no one particular type of financial evidence a plaintiff must obtain or introduce to satisfy its burden of demonstrating the defendant's financial condition. Evidence of the defendant's net worth is the most commonly used, but that metric is too susceptible to manipulation to be the sole standard for measuring a defendant's ability to pay." (*Soto v. BorgWarner Morse TEC Inc.* (2015) 239 Cal.App.4th 165, 194.) "[T]here should be some evidence of the defendant's actual wealth' [citation], but the precise character of that evidence may vary with the facts of each case [citations]." (*Id.* at pp. 194–195.) We review the award of punitive damages for substantial evidence. (See *Kelly v. Haag* (2006) 145 Cal.App.4th 910, 916.)

## B.    Forfeiture

As with defendant's sanctions claim, plaintiff contends that defendant forfeited her substantial evidence argument here by failing to discuss all relevant evidence in the record. We agree.

Defendant's discussion of the default prove-up and damages award takes up two paragraphs of her opening brief. She described the evidence submitted by plaintiff in support of default judgment as "asserted real-estate valuations and a property-transaction search." She does not otherwise cite to or detail the evidence presented at the hearing, which included declarations of three experts, certified records, and valuation reports. Similarly, she does not cite to or discuss the declarations submitted by plaintiff and her neighbor supporting her claim for damages for emotional distress. By failing to address the relevant evidence in the record, defendant has forfeited her argument that the court lacked sufficient evidence to award damages to plaintiff. (See, e.g., *E.I., supra*, 111 Cal.App.5th at pp. 1285-1286 [finding that a party's failure to meet its burden to "set forth, discuss, and analyze all the evidence on that point, both favorable and unfavorable" thereby "waives any claim that the trial court's . . . finding is not supported by substantial evidence"]; *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177

21

Cal.App.4th 209, 218.) However, as we explain below, even if we considered the substance of defendant's claims, we would affirm.

## C.  Noneconomic damages

Defendant argues that plaintiff cannot recover damages for emotional distress on a claim for constructive eviction because defendant cannot establish the necessary element that she surrendered possession of the premises. Plaintiff points out that although her first cause of action is labeled as one for wrongful eviction, it does not allege a claim for wrongful or constructive eviction. Instead, the SAC alleges that defendant caused the interruption or termination of utility services, removed plaintiff's personal property without consent, removed the exterior door, and prevented plaintiff from accessing the room by changing the locks. (Civ. Code, § 789.3, subds. (a), (b)(1)-(3).) Plaintiff further alleged in the SAC that she was entitled to actual damages, including $400,000 for emotional distress, as a result of these violations. Defendant has not suggested how these allegations were insufficient to support the damages award.

Defendant also argues that the award of noneconomic damages was "massive" and "enormous," and that it required "evidence, not labels." She does not further explain how plaintiff's evidence presented at the default prove-up was insufficient. Indeed, she cites no evidence or authority in support of this claim. As such, we need not address it further. (See, e.g., *Sporn v. Home Depot USA, Inc.* (2005) 126 Cal.App.4th 1294, 1303 ["Contentions on appeal are [forfeited] by a party who fails to support them with reasoned argument and citations to authority."].)

## D.  Punitive damages

Relying on *Adams, supra*, 54 Cal.3d 105, defendant argues that plaintiff did not present meaningful evidence of defendant's financial condition in support of the punitive damages award.

First, defendant contends that plaintiff only presented evidence of assets, but was also required to introduce evidence of liabilities to establish defendant's true ability to pay. "A plaintiff who seeks punitive damages ordinarily must introduce evidence of a defendant's net worth." (*Garcia v. Myllyla* (2019) 40 Cal.App.5th 990, 995.) "However, a defendant who thwarts a plaintiff's ability to meet this obligation may forfeit the right to complain

about the lack of evidence of his or her financial condition." (*Ibid.*; see also *Corenbaum v. Lampkin* (2013) 215 Cal.App.4th 1308, 1338; *Mike Davidov Co. v. Issod* (2000) 78 Cal.App.4th 597, 609 ["By his disobedience of a proper court order, defendant improperly deprived plaintiff of the opportunity to meet his burden of proof on the issue. Defendant may not now be heard to complain about the absence of such evidence."].)

Here, plaintiff was unable to present evidence of defendant's liabilities because of defendant's litigation conduct. Defendant refused to answer questions at her deposition, including how many properties she owned. She then failed to appear for trial, preventing plaintiff from questioning her on her finances. As such, defendant is estopped from challenging the punitive damage award based on insufficiency of the evidence. (See *Fernandes v. Singh* (2017) 16 Cal.App.5th 932, 942 ["A defendant is in the best position to know his or her financial condition, and cannot avoid a punitive damage award by failing to cooperate with discovery orders"]; *Garcia v. Myllyla, supra,* 40 Cal.App.5th at p. 995.)

Second, defendant contends the evidence of her assets was insufficient to meet the standard in *Adams*. But aside from conclusory and derogatory descriptions of the evidence, such as references to "punishment-by-Google" or an "informal asset narrative," defendant fails to identify any specific issue or deficiency with the evidence presented by plaintiff. Similarly, defendant argues that the award was based on "false ownership assumptions" but points to nothing in the record to support that claim. Nor does she raise any specific challenge to the qualifications of plaintiff's experts or the bases for their opinions. The record shows that the court considered the evidence presented by plaintiff, including expert declarations and certified records, and found that the amount of punitive damages was reasonable to punish defendant and deter future misconduct. Defendant has not met her burden to establish that this finding was in error.[7]

---

[7]    Defendant's contention that the punitive damages award does not meet federal due process standards fails for the same reasons.

## V. Bias

Defendant also argues that the trial court engaged in "judicial bullying," by, inter alia, imposing unwarranted sanctions and denying trial continuances, with the intent of "systematically stripp[ing] [defendant] of counsel and a fair trial." The record does not support any of these accusations. As discussed above, defendant does not establish that she made a showing of good cause to support any of her requests for a continuance. She made these requests on an emergency basis, close to the time of trial, claiming that she needed a year or more to retain counsel. But in each instance, she had been proceeding in pro per for months or years prior to her last-minute request. She points to nothing in the record explaining her absence from the FSCs or countering the trial court's rejection of her medical note as not credible.

Moreover, although she repeatedly accuses the court of improperly sanctioning her counsel, the record provides no support for that claim. To the contrary, the court issued fairly modest monetary sanctions following notice and an opportunity to be heard, based on the undisputed facts that defendant had failed to comply with prior discovery orders and that she and her counsel failed to attend the MSC. In addition, there is nothing in the record to support defendant's assertion that her counsel withdrew from the case based on any statements or conduct by the court. As such, defendant has not established any bias or other unfair treatment and we reject her claims of due process violations. (See *Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 589 ["It is 'extraordinary' for an appellate court to find judicial bias amounting to a due process violation."].)[8]

Finally, we find it necessary to comment on the tone of defendant's briefing. As noted here, her appellate briefs are replete with unsupported allegations that the trial court engaged in bullying that "weaponized" court procedures by "stripping an elderly, limited-English litigant of counsel and then penaliz[ing] her for being unrepresented," and then engaging in "judicial self-help" by striking the disqualification motion so that the court could force

---

[8] Defendant also argues that any reversal of the judgment must result in dismissal of the matter for failure to bring the case to trial within five years. Because we affirm the judgment, this argument is moot.

the case into a "rapid slide from calendar-management frustration to case-ending punishment" because the court "concluded the case had become troublesome or inconvenient." Defendant's briefing below took a similarly antagonistic tone.

Ad hominem attacks on the opposing party or the court have no place in appellate briefing. (See *Pierotti v. Torian* (2000) 81 Cal.App.4th 17, 32-33.) "When counsel resort to name-calling and to unsupported claims of misconduct, they risk obscuring any meritorious arguments they may have." (*WasteXperts, Inc. v. Arkaelian Enterprises* (2024) 103 Cal.App.5th 652, 667.) They also impose "a real cost to the opposing party and the state" (*Pierotti v. Torian, supra*, 81 Cal.App.4th at pp. 32-33), as both opposing counsel and the court must "spend additional resources filtering out the hyperbole." (*WasteXperts, Inc. v. Arkaelian Enterprises, supra*, 103 Cal.App.5th at p. 667.) Counsel can zealously dispute the facts of a case or the merits of a ruling without resorting to unprofessional vitriol. We expect counsel to do so in the future.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to her costs of appeal.

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

COGLIATI, J.*

We concur:

MORI, ACTING P. J.                    TAMZARIAN, J.

---

* Judge of the Santa Cruz Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

25